O

# United States District Court
# Central District of California

| | |
|---|---|
| PATRICIA STEWART, D.O.,<br>　　　　　Plaintiff,<br>　　v.<br><br>AMERICAN ASSOCIATION OF PHYSICIAN SPECIALISTS, INC.;WILLIAM CARBONE; ANTHONY DURANTE; DOUGLAS MARCINIACK; ROBERT CERRATO; ANTHONY RUSSO; STEPHEN MONTES; JOSEPH GALLAGHER; BRIAN FEAVER; KEN WALLACE; WILLIAM ANDERSON; THOMAS BALSHI; SUSAN SLOMINSKI; SVETLANA RUBAKOVIC; LORI HONEYCUTT; ROBERT ILOWITE; BART MAGGIO,<br>　　　　　Defendants. | Case No. 5:13-cv-01670-ODW(DTBx)<br><br>**ORDER GRANTING MOTION TO DISMISS [48, 50, 51, 52, 54, 56, 57, 58]** |

## I.　INTRODUCTION

On February 20, 2014, just under half of the defendants in this action—Anthony Durante, Joseph Gallagher, Brian Feaver, Anthony Russo, Douglas Marciniak, Ken Wallace, Robert Ilowite, and Thomas Balshi—filed motions to

dismiss for lack of personal jurisdiction. (ECF Nos. 48, 50–52, 54, 56–58.) All of the aforementioned defendants are members of Defendant American Association of Physician Specialists' ("AAPS") Board of Directors. These defendants have moved to dismiss Plaintiff Patricia Stewart's claims on the grounds that their contacts with California were not in their corporate-agent, rather than personal, capacities, and therefore they as individuals are shielded from suit in California. For the reasons discussed below, the Court finds that it lacks personal jurisdiction over the individual defendants and accordingly **GRANTS** the Motions to Dismiss.[1]

## II. FACTUAL BACKGROUND

Stewart is a licensed physician specializing in dermatology. (Compl. ¶ 3.) AAPS is a nonprofit corporation that certifies physicians in various medical specialties. (*Id.* ¶¶ 4–5.) AAPS certification confers the honor, credibility, rights, and privileges of a qualified medical specialist—and consequently, lucrative career opportunities for physicians. (*Id.* ¶ 5.) AAPS has several subspecialty academies for physicians specializing in different areas of medicine, including the American Academy of Specialists in Dermatology ("AASD"). (*Id.* ¶ 7.)

Stewart participated in and completed the AAPS training-certification program. (*Id.* ¶ 31.) During the training, Stewart filed sexual harassment charges against her AAPS trainers. (*Id.*) Stewart asserts that AAPS retaliated against her for filing charges by refusing to recognize Stewart's participation in AAPS's training program, which prevented her from sitting for the dermatology board certification. (*Id.*) Ultimately, Stewart filed a charge of discrimination against AAPS with the EEOC. (*Id.* ¶ 33.) After two years, AAPS agreed to allow Stewart to sit for the dermatology certification exam, and upon passing Stewart became an AAPS member. (*Id.* ¶ 34.)

Stewart asserts that AAPS created a hostile work environment for her as a member because officers of AAPS's leadership board circulated pornographic and

---

[1] Having carefully considered the papers filed in support of and in opposition to the Motions to Dismiss, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

racially biased emails. (*Id.* ¶¶ 47–48.) Stewart alleges that the distribution of these inappropriate emails, as well as alleged financial misconduct, prompted several physician members to investigate AAPS leadership. (*Id.* ¶ 54.) She avers that AAPS retaliated against these would-be whistleblowers by obtaining access to confidential emails and used this evidence to suspend their memberships. (*Id.* ¶¶ 55–56.)

Stewart contends that when she called for the physician whistleblowers' reinstatement, AAPS took several adverse actions against her as well. First, Stewart alleges that AAPS filed a meritless defamation lawsuit[2] against Stewart and another physician in Thirteenth Judicial Circuit for Hillsborough County, Florida, in Case No. 11-004947 ("the Florida Action"), alleging that Dr. Stewart was part of a conspiracy to destroy AAPS. (Compl. ¶ 61.) Second, on March 26, 2012, AAPS removed Stewart from her elected position as AAPS Governor. (*Id.* ¶ 62; Ex. Q.) Third, on March 28, 2012, Defendants Stephen Montes, Robert Cerrato, Bart Maggio, and Joseph Gallagher allegedly sent out an email that falsely accused Stewart of campaigning to destroy AAPS. (*Id.* ¶ 63; Ex. S.) Fourth, on May 30, 2012, Defendants Susan Slominski, Svetlana Rubakovic, Thomas Balshi, Lori Honeycutt, Robert Ilowite, and Ken Wallace allegedly sent another similar defamatory email. (*Id.* ¶ 64; Ex. T.)

Stewart alleges that on May 30, 2012, Defendant Cerrato and the members of the Disciplinary Committee—Defendants Montes, Wallace, and Maggio—used the defamatory letters as a pretext to terminate Stewart's membership in AAPS for participating in "conduct injurious to, and not in the best interests of AAPS," without notifying her of the meeting or providing her an opportunity to present evidence in her defense. (*Id.* ¶ 66; Ex. V.)

Stewart contends that the AAPS Board of Directors offered to permit her to present evidence in her defense at a June 9, 2012 meeting—after the Board had

---

[2] The court in the Florida Action determined that it lacked personal jurisdiction over Stewart. AAPS appealed to Florida's Second District Court of Appeals ("the Florida Appeal").

already voted to terminate her membership. (*Id.* ¶ 67.) Stewart further alleges that Cerrato prevented Stewart from attending the annual AAPS meeting held on June 25, 2012 in Marina Del Rey, California. (*Id.* ¶ 69.) Stewart asserts that at the AAPS annual meeting held in California, the AAPS Board, prompted by Defendants Cerrato and Carbone, made a defamatory presentation to the entire AAPS membership. Stewart alleges that they falsely stated that Stewart had authored and published a subversive Internet blog. (*Id.* ¶ 71.) She asserts that the false attribution harmed her reputation within the organization. (*Id.* ¶ 72.)

On September 16, 2013, Stewart filed suit against AAPS and 16 individual defendants who are part of AAPS's Board of Directors. (ECF No. 1.) Eight of the individual defendants held various positions on the Board: Durante held the position of Chief Financial Officer of AAPS, (*Id.* ¶ 9); Marciniak is the current President and sits on the Board and Executive Committee, (*Id.* ¶ 10); Cerrato is the former President and sits on the Board, Executive Committee, and legal task force, (*Id.* ¶ 11); Russo was the President of AAPS prior to Cerrato, (*Id.* ¶ 12); Montes is a member of the Board, disciplinary committee, and legal task force, (*Id.* ¶ 13); Gallagher is a member of the Board and legal task force, (*Id.* ¶14); Feaver was a member of the Board, (*Id.* ¶ 15); and Wallace is a member of the Board and disciplinary committee, (*Id.* ¶ 16). Three of the individual defendants hold officer positions on the AASD Board of Governors: Balshi, Ilowite, and Wallace were Governors of AASD. (Compl. ¶¶ 18, 22; Ex. T.)

Stewart asserts five claims against the individual defendants: (1) declaratory relief, (2) unfair business practices in violation of California Business & Professions Code section 17200, (3) breach of fiduciary duty, (4) defamation, and (5) intentional interference with prospective economic advantage. (ECF No. 1.)

### III. LEGAL STANDARD

When a defendant moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of demonstrating jurisdiction exists. *Love*

4

*v. Assoc. Newspapers Ltd.*, 611 F.3d 601, 608 (9th Cir. 2010). Where, as here, the motion is based on written materials rather than an evidentiary hearing, a court's only question is whether the plaintiff's pleadings and affidavits make a prima facie showing of personal jurisdiction. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). A plaintiff cannot "simply rest on the bare allegations of its complaint," but undisputed allegations in the complaint must be taken as true. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Furthermore, "[c]onflicts over statements contained in affidavits must be resolved in [the plaintiff's] favor." *Love*, 611 F.3d at 608.

District courts have the power to exercise personal jurisdiction to the extent of the law of the state in which they sit. Fed. R. Civ. P. 4(k)(1)(A); *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1988). California's long-arm jurisdictional statute is coextensive with federal due-process requirements, so the jurisdictional analysis for a nonresident defendant under state law and federal due process is the same. *See* Cal. Civ. Proc. Code § 410.10; *Roth v. Garcia Marquez*, 942 F.2d 617, 620 (9th Cir. 1991).

For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have sufficient "minimum contacts" with the forum state so that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Under the "minimum contacts" analysis, a court may obtain either general jurisdiction or specific jurisdiction over a nonresident defendant. *Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001). If the defendant's activities are insufficient to subject him to general jurisdiction, then the court looks to the nature and quality of the defendant's contacts in relation to the cause of action to determine specific jurisdiction. *Data Disc, Inc. v. Systems Tech. Assoc. Inc.*, 557 F.2d 1280, 1287 (9th Cir. 1977).

/ / /

/ / /

## IV. DISCUSSION

The individual defendants move to dismiss this Stewart's claims against him for lack of personal jurisdiction. Stewart contends that the AAPS Board of Directors' actions in California are sufficient to exercise jurisdiction over the individual defendants—who are members of the Board. Because the Court finds that the individual defendants' actions are properly attributable to AAPS and not to the individuals, the Court **GRANTS** the Motions to Dismiss for Lack of Personal Jurisdiction. (ECF Nos. 48, 50–52, 54, 56–58.)

### A. General Jurisdiction

A court has general jurisdiction when the defendants engage in "continuous and systematic general business contacts . . . that approximate physical presence in the forum state." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (internal quotations marks omitted). Stewart does not argue that individual defendants' contacts with California are so pervasive as to justify the exercise of general jurisdiction. And the record reveals that none of the individual defendants have continuous and systematic contacts with California: they are not California residents, do not hold any California professional or business licenses or an ownership interest or position in a California business. (Durante Decl. ¶¶ 4–7; Gallagher Decl. ¶¶ 4–9; Balshi Decl. ¶¶ 4–8; Feaver Decl. ¶¶ 4–8; Wallace Decl. ¶¶ 4–9; Marciniack Delc. ¶¶ 4–7; Russo Decl. ¶¶ 4–8; Ilowite Decl. ¶¶ 4–9.)

Stewart argues that the Court has general jurisdiction over Russo, Marciniak, Gallagher, Feaver, and Wallace, because they were personally served "in a California case that arose out of the same transactions and occurrences as this present litigation."[3] (Opp'n 17.) Although courts are free to assert jurisdiction over

---

[3] Additionally, although Stewart makes a passing mention of this California action in her brief, she provides the Court with no additional information about the suit; it is not mentioned in the Complaint or in her declaration. Notably, the defendants aver in their sworn declarations that, other than the instant action, they have never been party to any litigation in California. (Gallagher Decl. ¶ 9; Russo Decl. ¶ 9; Marciniack Decl. ¶ 7; Wallace Decl. ¶ 9; Feaver Decl ¶ 9.)

nonresidents based on in-state service of process, Stewart presents no authority for her assertion that this Court is free to exercise jurisdiction over the individual defendants based on past service in a separate action.

Accordingly, the Court need only determine whether Stewart has sufficiently established that the Court may exercise specific jurisdiction the individual defendants.

### B. Specific Jurisdiction

A court may assert specific jurisdiction over a claim for relief that arises out of a defendant's forum-related activities. *Rano v. Sipa Press Inc.*, 987 F.2d 580, 588 (9th Cir. 1993). The analysis for specific jurisdiction is as follows:

> (1) the nonresident defendant must purposefully direct his activities or consummate some transaction with the forum or residents thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987). The plaintiff bears the burden of satisfying the first two prongs, and if either of these is not satisfied, personal jurisdiction is not established. *Schwarzenegger*, 374 F.3d at 802.

Stewart argues that the individual defendants are subject to personal jurisdiction because her claims against them arise out of their contacts with California. Stewart asserts that the entire Board intentionally came to California to harm her. Consequently, Stewart argues, the individuals comprising the Board had legally sufficient minimal contacts with California to exercise jurisdiction over them for harm arising out that California meeting. The individual defendants respond that their contact with California resulted from actions taken in their corporate rather than individual capacities and thus they are protected from suit in California by the fiduciary-shield doctrine.

The fiduciary-shield doctrine is a judicially created principle that precludes the exercise of personal jurisdiction over nonresident corporate agents who are acting in

the forum state in their role as corporate agents. *Davis v. Metro Productions, Inc.,* 885 F.2d 515, 521 (9th Cir.1989). Consequently, the fact that a corporation is subject to personal jurisdiction does not necessarily mean that the corporation's nonresident officers, directors, agents, and employees are as well. *Colt Studio, Inc. v. Badpuppy Enter.,* 75 F. Supp. 2d 1104, 1111 (C.D. Cal. 1999). But the corporate form may be ignored (1) where the corporation is the agent or alter ego of the individual defendant, *Flynt Distrib. Co. v. Harvey,* 734 F.2d 1389, 1393 (9th Cir.1984), or (2) where a corporate officer or director authorizes, directs, or participates in tortious conduct, *Transgo, Inc. v. Ajac Transmission Parts Corp.,* 768 F.2d 1001, 1021 (9th Cir.1985).

Corporate officers and directors are personally liable for all torts in which they are the primary participant, notwithstanding that they were acting as an agent of the corporation. *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.,* 173 F.3d 725, 734 (9th Cir.1999) (corporate officers cannot "hide behind the corporation where [the officer was] an actual participant in the tort"). But mere knowledge of the tortious conduct is not enough to hold a director or officer personally liable—there must be other "unreasonable participation" in the unlawful conduct by the individual. *See, e.g.*, *PMC, Inc. v. Kadisha,* 78 Cal. App. 4th 1368, 1389 (2000).

The Ninth Circuit noted that "[c]ases which have found personal liability on the part of corporate officers have typically involved instances where the defendant was the 'guiding spirit' behind the wrongful conduct . . . or the 'central figure' in the challenged corporate activity." *Davis*, 885 F.2d at 524; *Wolf Designs, Inc. v. DHR Co.*, 322 F. Supp. 2d 1065, 1072 (C.D. Cal. 2004) (exercising personal jurisdiction where individual had "control of, and direct participation in the alleged activities."). Thus, the issue to be resolved is whether the individual defendants were primary participants or "guiding spirit" in the alleged wrongdoing intentionally directed at California.

/ / /

/ / /

### *1. Defendant Durante*

Stewart argues that the Court has personal jurisdiction over Durante as an individual because Durante (1) was physically present at the annual AAPS meeting where she was allegedly defamed, and (2) hired the security guards who prevented Stewart from entering that meeting to present evidence that disciplinary termination was not warranted. Durante argues that he is not subject to personal jurisdiction because his actions at the AAPS meeting in California were undertaken solely in his corporate-officer capacity. Durante asserts that even if AAPS committed the alleged torts, Stewart alleges no facts that indicate he directly participated in the torts in a personal capacity. The Court agrees.

Stewart's assertion that Durante is subject to personal jurisdiction in California is based exclusively on his status as Director of Operations of AAPS. Stewart alleges[4] that the entire Board—and thus Durante—defamed her at the annual AAPS meeting, and in doing so breached its fiduciary duty to her and interfered with her prospective employment. (Compl. ¶¶ 67–69, 71–72). But the Board acted solely on behalf of AAPS. It is the Board's function to enforce its bylaws through its Disciplinary Committee. Thus regardless of whether the Board's statements that Stewart was disobeying the bylaws and campaigning to destroy AAPS were false, it was within the corporate function of the Board to terminate the membership of physicians for conduct injurious to AAPS. Durante may not have liked Stewart, but the record contains no evidence that Durante was acting solely for his own benefit by participating in the slide presentation at the annual AAPS meeting that explained to the AAPS membership the grounds for Stewart's membership termination. Rather, the record

/ / /

---

[4] Stewart also alleges that Durante used AAPS funds to solicit a hacker to obtain and destroy evidence of AAPS's wrongdoing from the personal email account of AAPS's former director of governmental affairs so that AAPS could suspended the whistleblowers' AAPS membership. (Compl. ¶¶ 55–56, 142.) But these alleged acts had nothing to do with Stewart—she does not allege that Durante conspired to hack in to *her* computer or got *her* suspended.

reflects that Durante as an agent of AAPS was acting—however misguidedly—in furtherance of AAPS.

Moreover, Stewart does not allege any facts demonstrating that Durante was a primary participant in the alleged wrongful activities—separate and apart from his role as Director of Operations—sufficient to support a finding that Durante should be subject to suit in his personal capacity. Instead, the allegations in the complaint refer to the conduct and acts of the entire Board. Accordingly, because there are no facts in the Complaint plausibly suggesting that Durante was the primary participant in the alleged wrongdoing, the allegations in the complaint are insufficient to establish personal jurisdiction over the individual defendants.

Stewart's assertion that Durante was personally responsible for hiring the security guards similarly fails. Stewart's argument is based purely on Durante's status as Director of Operations: Stewart contends Durante was necessarily responsible for hiring the guards because it is the Director of Operation's responsibly to do so. Thus, Stewart seeks to establish personal jurisdiction over Durante based on actions undertaken because of his corporate title. This is improper.

*2. Defendant Gallagher*

Similarly, Stewart argues that the Court has personal jurisdiction over Gallagher as an individual because Gallagher (1) was physically present at the annual AAPS meeting where she was allegedly defamed, and (2) was a member of the AAPS Legal Task Force that sent the March 28, 2012 email that allegedly defamed her. Gallagher argues that he is not subject to personal jurisdiction because his actions were undertaken solely in his corporate-officer capacity as member of the AAPS Board and Legal Task Force. Gallagher asserts that even if AAPS committed the alleged torts, Stewart alleges no facts that indicate he directly participated in the torts in a personal capacity. The Court agrees.

Stewart's assertion that Gallagher is subject to personal jurisdiction in California is based exclusively on his corporate status. As discussed above, the Board

presentation at the annual AAPS meeting was undertaken solely on behalf of AAPS. And the record contains no evidence that Gallagher was acting solely for his own benefit by participating in the slide presentation. Rather, the record reflects that Gallagher was acting as a Board member, in furtherance of AAPS.

Additionally, Stewart again fails to allege any facts demonstrating that Gallagher was a primary participant in the alleged wrongful activities—separate and apart from his role as Board and Legal Task Force Member—sufficient to support a finding that Durante should be subject to suit in his personal capacity. Instead, the allegations in the complaint refer to the conduct and acts of the entire Board and the entire Legal Task Force. Accordingly, because there are no facts in the Complaint plausibly suggesting that Gallagher was the primary participant in the alleged wrongdoing, the allegations in the complaint are insufficient to establish personal jurisdiction over him.

### 3. *Defendants Balshi, Ilowite, and Wallace*

Stewart contends that the Court has personal jurisdiction over Defendants Balshi, Ilowite, and Wallace because they (1) were physically present at the annual AAPS meeting where she was allegedly defamed, and (2) were members of the AASD's Board of Governors, which she alleges defamed her. Stewart asserts that AAPS forced the AASD Board of Governors to send the May 30, 2012 email to AASD members that allegedly defamed her because it stated that Stewart had challenged the AAPS's actions and bylaws. (Compl. ¶ 64; Ex. T.) Stewart asserts that this email was used by the AAPS Board as a pretext for terminating Stewart's membership. (*Id.* ¶ 86.)

Balshi, Ilowite, and Wallace argue that they are not subject to personal jurisdiction because their actions were undertaken solely in their corporate-officer capacity as AASD Governors. They assert that even if AAPS or AASD committed the alleged torts, Stewart alleges no facts that indicate that they directly participated in the torts in their personal capacities. Again, the Court agrees.

Stewart's assertion that Gallagher is subject to personal jurisdiction in California is based exclusively on his corporate status. As discussed above, the Board presentation at the annual AAPS meeting was undertaken solely on behalf of AAPS. And the record contains no evidence that Gallagher was acting solely for his own benefit by participating in the slide presentation. Rather, the record reflects that Gallagher was acting as a Board member, in furtherance of AAPS.

Additionally, Stewart does not allege any facts demonstrating that Balshi, Ilowite, and Wallace were primary, personal participants in the alleged wrongful activities sufficient to subject them to suit in their personal capacities. Instead, the allegations in the complaint refer to the conduct and acts of the AAPS Board— Stewart actually accused Defendant Cerrato of authoring the email and forcing the AASD Governors to send it. (Compl. ¶ 86.) Accordingly, because there are no facts in the Complaint plausibly suggesting that Balshi, Ilowite, and Wallace were primary participants in the alleged wrongdoing, the allegations in the complaint are insufficient to establish personal jurisdiction over them.

### 4. Defendants Feaver, Marciniack, and Russo

Finally, Stewart asserts that the Court has personal jurisdiction over Feaver, Marciniack, and Russo as individuals based only on their attendance at the annual AAPS meeting where she was allegedly defamed. But again, Feaver, Marciniack, and Russo's participation in the allegedly defamatory slide show at the annual AAPS meeting was only in their corporate officer capacities. Stewart alleges no facts that indicate they were acting solely for their own benefits by participating in the slide presentation. Rather, the record reflects that they were acting—however misguided— as Board members, in furtherance of AAPS. Stewart also fails to allege any facts demonstrating that Feaver, Marciniack, and Russo were primary participants in the alleged wrongful activities. The allegations in the complaint refer only to the acts of the entire Board. Accordingly, because there are no facts in the Complaint plausibly suggesting that Feaver, Marciniack, and Russo had any additional unreasonable

personal participation in the alleged wrongdoing, the allegations in the complaint are insufficient to establish personal jurisdiction over them.

Although the individual defendants' conduct may ultimately subject them to personal liability, it cannot form the predicate for this Court's exercise of jurisdiction over them as individuals. Absent direct *personal* participation and control—distinct from actions undertaken in their role as corporate agents—a corporation's nonresident agents contacts with the forum state will not suffice to establish personal jurisdiction. *See Davis*, 885 F.2d at 524. Because Stewart has not alleged sufficient facts to demonstrate such personal participation, the Court finds that the individual defendants are shielded from suit in California by the fiduciary-shield doctrine. Consequently, the Court lacks personal jurisdiction over them.

## V. CONCLUSION

For the reasons discussed above, Defendants Durante, Ghallager, Feaver, Marciniack, Balshi, Ilowite, Wallace and Russo's motions to dismiss for lack of personal jurisdiction are **GRANTED**. (ECF Nos. 48, 50–52, 54, 56–58.)

**IT IS SO ORDERED.**

May 15, 2014

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**