**O**

# United States District Court
# Central District of California

| | |
|---|---|
| PATRICIA STEWART, D.O.,<br>             Plaintiff,<br>      v.<br><br>AMERICAN ASSOCIATION OF<br>PHYSICIAN SPECIALISTS, et al.,<br>             Defendants. | Case No. 5:13-cv-01670-ODW(DTBx)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS [47, 49, 53, 55]** |

## I.    INTRODUCTION

On February 20, 2014, Defendants filed Motions to Dismiss many of Plaintiff Patricia Stewart's claims for declaratory relief, unfair business practices, breach of fiduciary duty, defamation, intentional interference with prospective economic advantage, and indemnification for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  (ECF Nos. 47, 49.)  For the reasons discussed below, the Court **GRANTS IN PART AND DENIES IN PART** the Motions to Dismiss.[1]

/ / /

---

[1] Having carefully considered the papers filed in support of and in opposition to the Defendants' motions to dismiss, the Court deems the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; L.R. 7-15.

## II.   FACTUAL BACKGROUND

Stewart is a licensed physician specializing in dermatology.  (Compl. ¶ 3.)  AAPS is a Florida not-for-profit corporation that certifies physicians in various medical specialties.  (*Id.* ¶¶ 4–5.)  AAPS certification confers the honor, credibility, rights, and privileges of a qualified medical specialist—and consequently, lucrative career opportunities for physicians.  (*Id.* ¶ 5.)  AAPS has several subspecialty academies for physicians specializing in different areas of medicine, including the American Academy of Specialists in Dermatology ("AASD").  (*Id.* ¶ 7.)

Stewart participated in and completed the AAPS training-certification program.  (*Id.* ¶ 31.)  During the training, Stewart filed a sexual-harassment charges against her AAPS trainers.  (*Id.*)  Stewart asserts that AAPS retaliated against her for filing charges by refusing to recognize Stewart's participation in AAPS's training program, which prevented her from sitting for the dermatology board certification.  (*Id.*)  Ultimately, Stewart filed a discrimination charge against AAPS with the EEOC.  (*Id.* ¶ 33.)  After two years, AAPS agreed to allow Stewart to sit for the dermatology certification exam.  (*Id.* ¶ 34.)

Stewart also asserts that AAPS created a hostile work environment for her as a member because officers circulated pornographic and racially biased emails.  (*Id.* ¶¶ 47–48.)  Stewart alleges that the distribution of these inappropriate emails, as well as other alleged AAPS misconduct, prompted several physicians to investigate these matters.  (*Id.* ¶ 54.)  She avers that AAPS retaliated against these physician-whistleblowers by obtaining access to confidential emails and using this information as evidence to suspend them.  (*Id.* ¶¶ 55–56.)

Stewart contends that when she called for the physician-whistleblowers' reinstatement, AAPS took several adverse actions against her.  First, Stewart alleges that AAPS filed a meritless defamation lawsuit[2] against Stewart and another physician

---

[2] The court in the Florida Action determined that it lacked personal jurisdiction over Stewart.  AAPS appealed to Florida's Second District Court of Appeals ("the Florida Appeal").

in the Thirteenth Judicial Circuit for Hillsborough County, Florida, in Case No. 11-004947 ("the Florida Action"), alleging that Dr. Stewart was part of a conspiracy to destroy AAPS.  (Compl. ¶ 61.)  Second, on March 26, 2012, AAPS removed Stewart from her elected position as AAPS Governor.  (*Id.* ¶ 62; Ex. Q.)  Third, on March 28, 2012, Defendants Stephen Montes, Robert Cerrato, Bart Maggio, and Joseph Gallagher allegedly sent out an email that falsely accused Stewart of campaigning to destroy AAPS.  (*Id.* ¶ 63, Ex. S.)  Fourth, on May 30, 2012, Defendants Susan Slominski, Svetlana Rubakovic, Thomas Balshi, Lori Honeycutt, Robert Ilowite, and Ken Wallace allegedly sent another similar defamatory email.  (*Id.* ¶ 64, Ex. T.)

Stewart alleges that on May 30, 2012, Cerrato and the members of the Disciplinary Committee—Montes, Wallace, and Maggio—used the defamatory letters as a pretext to terminate Stewart's membership in AAPS for "conduct injurious to, and not in the best interests of AAPS," without notifying her of the meeting or providing her an opportunity to present evidence in her defense.  (*Id.* ¶ 66, Ex. V.)

Stewart contends that the AAPS Board of Directors offered to permit her to present evidence in her defense at a June 9, 2012 meeting—after the Board had already voted to terminate her membership.  (*Id.* ¶ 67.)  The special meeting was held in Tampa, Florida, and Stewart was not permitted to appear telephonically.  (*Id.*)  Stewart further alleges that Cerrato prevented Stewart from attending the annual AAPS meeting held on June 25, 2012, in Marina Del Rey, California. (*Id.* ¶ 69.)  Stewart asserts that at the AAPS annual meeting held in California, Defendants Cerrato and William Carbone made a presentation to the entire AAPS membership in which they falsely stated that Stewart had authored and published a subversive Internet blog.  Stewart alleges that the false attribution harmed her reputation within the organization.  (*Id.* ¶¶ 71–72.)

On September 16, 2013, Stewart filed suit against AAPS and 16 individual defendants who are part of AAPS's Board of Directors.  (ECF No. 1.)  Stewart alleges claims for (1) declaratory relief to set aside termination of her membership; (2) sex

discrimination and retaliation in violation of 42 U.S.C. § 2000 *et seq.*; (3) violation of California Civil Codes section 51 and 52; (4) violation of California Government Code section 1294(h); (5) unfair business practices in violation of California Business & Professions Code section 17200; (6) breach of fiduciary duty; (7) defamation; and (8) intentional interference with prospective economic advantage; and (9) indemnification. (ECF No. 1.) On February 20, 2014, Defendants filed motions to dismiss Stewart's claims. AAPS moves to dismiss Stewart's first, fifth, sixth, seventh, eighth, and ninth claim for relief. (ECF Nos. 47.) The individual defendants move to dismiss Stewart's fifth, sixth, seventh, and eighth claim for relief. (ECF Nos. 49, 53, 55.) These motions are now before the Court for decision.

### III.   LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The determination whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001). But a court need not blindly accept conclusory allegations,

1    unwarranted deductions of fact, and unreasonable inferences.  *Sprewell v. Golden*

2    *State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

3        As a general rule, a court should freely give leave to amend a complaint that has

4    been dismissed.  Fed. R. Civ. P. 15(a).  But a court may deny leave to amend when

5    "the court determines that the allegation of other facts consistent with the challenged

6    pleading could not possibly cure the deficiency."  *Schreiber Distrib. Co. v. Serv-Well*

7    *Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1986); *see Lopez v. Smith*, 203 F.3d 1122,

8    1127 (9th Cir. 2000).

9                          **IV.   DISCUSSION**

10       The Defendants move to dismiss Stewart's claims for declaratory relief to set

11   aside termination of her membership, unfair business practices, breach of fiduciary

12   duty, defamation, intentional interference with prospective economic advantage, and

13   indemnification for various individual reasons.  The Court addresses each in turn.

14           **A. Declaration of good standing**

15       Stewart's first claim for relief seeks a declaration from this Court that she has

16   remained an AAPS member in good standing.  (Compl. ¶ 83.)  Stewart alleges that

17   AAPS failed to give her sufficient notice prior to terminating her membership.  (*Id.*

18   ¶ 80.)   As such, she requests that this Court set aside and render void AAPS's

19   disciplinary actions made in violation of their bylaws.   AAPS moves to dismiss

20   Stewart's declaratory-relief claim as untimely.

21       Because AAPS is a not-for-profit corporation incorporated in Florida, it is

22   subject to Florida law.  Under Florida law, membership in a not-for-profit corporation

23   may not be terminated or suspended "except pursuant to a procedure that is fair and

24   reasonable and is carried out in good faith."   Fla. Stat. Ann. § 617.0607(1).   A

25   proceeding challenging "an expulsion, suspension, or termination, including a

26   proceeding in which defective notice is alleged, must be commenced within 1 year

27   after the effective date of the expulsion, suspension, or termination."   *Id.* at

28   § 617.0607(3).

Stewart alleges that AAPS failed to follow AAPS Bylaw section 3.05 in terminating her membership. (Compl. ¶ 81.) Stewart alleges that she was notified of her May 30, 2012 membership termination by way of a June 18, 2012 letter—thus she was not provided with the proper 30-day written notice. (*Id.* ¶ 82, Ex. V.) Stewart then filed suit against AAPS on September 16, 2013—over a year later. (ECF No. 1.) In the meager four sentences Stewart devotes to this argument, she argues that AAPS bylaws state that membership termination is not final until the member's internal appeal rights have been exhausted by presenting the member's case to an appeal board made up of past presidents. (Opp'n 21.) She asserts that it was not until March or April of 2013 that she realized that AAPS would not provide her with her appeal rights.

Stewart does not point to any AAPS bylaw that states that a member's termination is not final until the member's internal appeal rights have been exhausted. Indeed, such a provision is contained nowhere in the bylaws appended to her complaint. (ECF No. 1, Ex. Y.) Article three of the AAPS addresses physician membership. (*Id.*) Section 3.05 states that,

> The "affected member may appeal the decision of the Board of Directors by giving written notice of appeal to the Association . . .[which] shall refer the matter to an appeal board . . . . The appeal board shall schedule a hearing at which the affected member shall be entitled to appear and present information. At the conclusion of the hearing, the appeal board shall, by a majority vote of its members, affirm, reverse, or modify the decision of the Board of Directors. The decision of the appeal board shall be final and binding on the Association and on the affected member.

(*Id.*)

Stewart cites Title VII of the United States Code for the proposition that she was required to exhaust her administrative remedies prior to filing suit. But Title VII is inapplicable to this action: it governs *employment discrimination*. 42 U.S.C. § 2000 *et seq.* Florida law—which governs this action—contains no such demand. *See* Fla. Stat. Ann. § 617.0607. Nor do AAPS's bylaws state that membership termination

1    shall not take effect until affirmed by the appeal board.  (ECF No. 1., at Ex. Y.)
2    Stewart failed to file suit against AAPS to overturn her alleged wrongful membership
3    termination for more than the statutorily prescribed year.  Accordingly, her claim for
4    declaratory relief is untimely.  (ECF No. 1.)  AAPS's motion to dismiss Stewart's first
5    claim for declaratory relief is **GRANTED**.

6           However, formal bylaws of a corporation are construed as a contractual
7    agreement between the organization and its members because the enduring
8    relationship between the corporation and its members demonstrates an implied
9    agreement by all parties to abide by the bylaws.  *The Fla. Bar v. Town*, 174 So. 2d
10   395, 397 (Fla. 1965) (finding that the properly adopted by-laws of corporation are the
11   "basis of important contractual and legal obligations" and "constitute[] a binding
12   agreement . . . between the stockholders and the corporation."); *Berkowitz v. Delaire*
13   *Country Club, Inc.*, 126 So. 3d 1215, 1218 (Fla. Dist. Ct. App. 2012) ("Articles of
14   incorporation and corporate bylaws are construed applying principles of contract
15   interpretation.").  Accordingly, the Court construes the AAPS bylaws as a written
16   contractual agreement between AAPS and Stewart.  The Court therefore gives Stewart
17   leave to amend her complaint to reflect a breach-of-contract claim.

18                **B. Unfair business practices**

19          Stewart alleges that the Defendants have engaged in unfair, unlawful, and
20   deceptive business practices.  The Defendants move to dismiss Stewart's unfair-
21   business-practices claim because the factual allegations in the complaint do not allow
22   the Defendants to ascertain specifically which facts constitute unfair, fraudulent, or
23   deceptive acts.  The Court disagrees.

24          California's unfair competition law codified under Business and Professions
25   Code section 17200 ("UCL") encompasses "anything that can properly be called a
26   business practice and that at the same time is forbidden by law."  *Chabner v. United of*
27   *Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000).  An action under UCL
28   borrows violations from other laws and treats these violations, when committed under

business activity, as unlawful practices independently actionable under UCL. *Id.*; *Goldman v. Std. Ins. Co.*, 341 F.3d 1023, 1036 (9th Cir. 2003). A complaint fails to state a plausible claim if it "identifies no particular section of the statutory scheme which was violated and fails to describe with any reasonable particularity the facts supporting violation." *Khoury v. Maly's of Cal., Inc.*, 14 Cal. App. 4th 612, 619 (1993).

Here, Stewart adequately identifies the particular statutes and laws that AAPS is alleged to have violated. Stewart alleges the Defendants violated 42 U.S.C. § 2000, California Government Code sections 51 and 52; common-law proscriptions against defamation and libel; violation of California Corporations Code section 5341 and Florida Statute section 617.0607. (Compl. ¶ 117.) Stewart asserts that each of these unlawful acts serve as a predicate for recovery under section 17200. (*Id.*)

Stewart also identifies with reasonable particularity the facts supporting the violation. *Bros. v. Hewlett–Packard Co.,* No. C-06-02254 RMW, 2006 WL 3093685, at *7 (N.D. Cal. Oct. 31, 2006) (applying *Khoury,* 14 Cal. App. 4th at 619). Stewart alleges that the Defendants' actions in terminating her membership—the defamatory statements, fraudulently created evidence, and failure to comply with the notice provision contained AAPS Bylaw section 3.05—violate Florida Statute section 617.0607. (Compl. ¶ 118.) Stewart also asserts that AAPS's discrimination against female applicants violates 42 U.S.C. § 2000, California Government Code section 12940(h) and California Civil Code sections 51 and 52. (Compl. ¶ 120.) She fully outlines the facts supporting this alleged discrimination:

> AAPS [has] historical practices of imposing disparate eligibility requirements upon female applicants who are attempting to sit for the exam, providing copies of test answers in advance to male applicants or female applicants who receive quid pro quo assistance for gratifying to the unsolicited advances of their residency trainers and accept the terms and conditions of their hostile workplace environments, and Bill Carbone's practice of retroactively discriminatorily flunking female minority applicants [], or imposing disparate recertification requirements

upon individuals such as Plaintiff [] in order to prevent them from sitting for or passing the certification exam . . .

(Compl. ¶ 120.)   Stewart also clearly details the facts surrounding the Defendants' alleged defamatory statements.  (Compl. ¶¶ 145–148.)

Accordingly, the Court **DENIES** Defendants' motion to dismiss Sewart's fifth cause of action for unfair business practices.

### C. Breach of fiduciary duty

Stewart alleges that the Defendants breached their fiduciary duties to her when its unlawful acts culminated in her wrongful exclusion from AAPS membership. Stewart contends that each of the Defendant board members owed a fiduciary duty to AAPS and to its members—including Stewart—and that AAPS itself owed her a fiduciary duty.  Defendants moves to dismiss Stewart's breach-of-fiduciary-duty claim because Stewart fails to allege the existence of a fiduciary relationship between her and AAPS.

AAPS is incorporated under the laws of the State of Florida.  (Compl. ¶ 4) Accordingly, any fiduciary duties the AAPS Board owes to AAPS and its members must arise under Florida law.  *In re Friedlander Capital Mgmt. Corp.*, 411 B.R. 434 (Bankr. S.D. Fla. 2009).  Under Florida law, the elements of a breach-of-fiduciary-duty claim are "(1) the existence of a fiduciary duty; (2) the breach of that duty; and (3) damage proximately caused by that breach."  *In re Metro Sewer Servs., Inc.*, 374 B.R. 316, 326 (Bankr. M.D. Fla. 2007).

Fiduciary relationships are either expressly or impliedly created.  Expressly created fiduciary relationships are those created "by contract, such as principal/agent or attorney/client, or through legal proceedings, such as trustee/beneficiary and guardian/ward."  *Capital Bank v. MVB, Inc.*, 644 So. 2d 515, 518 (Fla. Dist. Ct. App. 1994).  Implied-in-law fiduciary relationships are premised on the relationship of the parties.  *Id.*  Courts have generally implied fiduciary relationships when "confidence is / / /

reposed by one party and a trust accepted by the other." *Id.* (internal quotation marks omitted).

Florida law has long recognized that corporate officers and directors owe fiduciary duties—duties of care, loyalty, and good faith—to corporations, including not-for-profits.  Fla. Stat. Ann. § 617.0830; *Fox v. Prof'l Wrecker Operators of Fl., Inc.*, 801 So. 2d 175, 181 (Fla. Dist. Ct. App. 2001).

Here, Stewart fails to sufficiently allege the existence of a fiduciary relationship between her and AAPS or its Board.  Stewart does not allege any independent relationship of trust from which the Court could imply a fiduciary relationship.  Rather, Stewart's sole contention is that AAPS and the Board owe her a fiduciary duty because she is a member of AAPS.  Stewart asserts that under Florida law, the officers and directors of not-for-profit corporations owe the corporation's members fiduciary duties.  In support of this assertion, Stewart directs the Court to *Fox*.

But *Fox* stands for no such proposition.  In *Fox*, the court found that members of not-for-profit corporations should be treated similarly to shareholders of for-profit corporations with respect to derivative actions.  *Fox*, 801 So. 2d at 180.  The Court declined to implement disparate treatment based on corporate purpose, and held that like for-profit corporations, the relationship between not-for-profit corporations and their directors and is a fiduciary one.  *Id.*  Stewart offers no authority that supports her position that the directors of a not-for-profit corporation owe their *members*—rather than the corporation—fiduciary duties.

Often it is the members of a not-for-profit corporation, like Stewart, who are most directly affected by a fiduciary breach by officers or directors.  But Florida has remedied that ill by statutorily providing members with standing to challenge directors' actions that may constitute breaches of their fiduciary duties.  Fl. Stat. Ann. § 617.0304(2)–(3); *Larsen v. Island Developers, Ltd.*, 769 So. 2d 1071, 1072 (Fla. Dist. Ct. App. 2000).  In so far as Stewart contends that the Board breached its fiduciary duty of obedience to AAPS by its failure to follow AAPS bylaws—an injury

suffered by the corporation generally—Stewart's proper recourse is a derivative suit. Because Stewart has not brought her breach-of-fiduciary-duty claim derivatively, the Court **GRANTS** Defendants' motions to dismiss Stewart's sixth cause of action on this ground.

### D. Defamation

At the outset, the Defendants analyze Stewart's claims for defamation and intentional interference with prospective economic advantage under Florida law. But Defendants provide no reason why the Court should utilize Florida rather than California law in analyzing Stewart's state-law claims. Applying California's choice-of-law rules, the Court determines that California law applies to Stewart's declaratory relief, breach of fiduciary duty, defamation, and intentional interference with prospective economic advantage claims. *Abogados v. AT&T*, 223 F.3d 932, 934 (9th Cir. 2000) (holding the courts must apply the choice-of-law rules of the forum state). The laws of the forum state generally apply unless a party "timely invokes the law of a foreign state." *Sommer v. Gabor,* 40 Cal. App. 4th 1455, 1467 (1995); *see also Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1043 (C.D. Cal. 1998).

In determining which state law to apply, California utilizes a three-part governmental-interest test. *Id.* First, the court examines the substantive law of each jurisdiction to determine whether the laws differ. *Id.* Second, if the laws do differ, the court examines each state's interest in applying its law to determine whether a "true conflict" exists. *Id.* Third, if more than one jurisdiction has a legitimate interest, the court then identifies which jurisdiction's interest would be more impaired if its law were not applied. *Id.* The party seeking to apply a foreign state's law "bears the burden of identifying the conflict between that state's law and California's law on the issue, and establishing that the foreign state has an interest in having its law applied." *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 995 (9th Cir. 2010) (citing *Wash. Mut. Bank v. Super. Ct.*, 24 Cal. 4th 906, 921 (2001)).

Here, the Defendants do not identify any differences in California and Florida law, nor any possible impairments of Florida's interests should its law not be applied in this action.  Indeed, the Defendants provide no reason for applying Florida's laws—they have established no significant differences between California and Florida or Florida's interest in having its law applied.  Because California has a strong governmental interest in protecting its citizens and the Defendants have failed to meet their burden to prove a sufficiently important countervailing interest, the Court applies California law to Stewart's defamation and intentional-interference claims.

Stewart alleges that the Defendants defamed her by releasing emails and making a presentation to its membership that falsely stated that she was actively campaigning to destroy AAPS.  Defendants move to dismiss Stewart's defamation claim because the communications Stewart points to are not actionable because they are privileged.[3]

In California, defamation is either libel or slander.  Cal. Civ. Code § 44. Slander results from oral or audible communications.  *Id.* § 46.  Libel is a false and unprivileged publication by writing or other fixed representation to the eye, which exposes any person to injury in his occupation.  *Id.* § 45; *SDV/ACCI, Inc. v. AT & T Corp.*, 522 F.3d 955, 959 (9th Cir. 2008).  Libel that is defamatory without requiring explanation is libel on its face, or libel per se, and is actionable without the need to prove damages.  Civ. Code § 45a; *Walker v. Kiousis*, 93 Cal. App. 4th 1432, 1441 (Ct. App. 2001).  Additionally, the California Court of Appeal has noted that "liability for libel may be imposed on a conspiracy theory."  *Sheppard v. Freeman*, 67 Cal. App. 4th 339, 349 (Ct. App. 1998).

Defendants' alleged comments about Stewart constitute libel per se.  While Stewart styles her causes of action as defamation per se, her allegations in fact only refer to libelous statements.  (Compl. ¶¶ 145–46, Exs. S, T, X.)  Stewart asserts that

---

[3] AAPS also moves to dismiss Stewart's defamation claim because, "the allegations are not pleaded with sufficient particularity . . . [u]nder Florida law . . . ."  (Mot. 8.)  But because California law—rather than Florida law—applies to this action, the Court does not address this argument.

the accusations in AAPS's emails and June 25, 2012 written slide presentation to its members are false.  (*Id.*)  Because these allegedly false statements require no extrinsic evidence and were published via email they are libelous per se, and California law thus presumes general damages to Stewart's reputation.  *Clark v. McClurg*, 215 Cal. 279, 284 (1932).

Instead of challenging the truthfulness of the statements, the Defendants assert that the communications are privileged.  First, the Defendants assert that the March 28, 2012 email from the legal task force is protected by the litigation privilege because it "does no more than set forth nonactionable legal opinions."  (Mot. 10.)  The Defendants also argue that the communications are covered by a qualified privilege because they relate to the activities of a private membership organization.

California's litigation privilege exempts from liability any defamatory publication made in any judicial or other official proceeding authorized by law.  Cal. Civ. Code § 47(b).  To invoke the privilege, the party claiming it must show that the allegedly defamatory statement was "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [it has] some connection or logical relation to the action."  *Silberg v. Anderson,* 50 Cal. 3d 205, 212 (1990); see also *Rothman v. Jackson,* 49 Cal. App. 4th 1134, 1140 (Ct. App. 1996).

Here, the March 28, 2012 email containing the allegedly defamatory statement was not made in judicial or quasi-judicial proceedings—it was not made in the courtroom, in court pleadings, during settlement negotiations, or in a presuit demand. Nor was the email sent in an attempt to achieve the objects of the litigation.  Rather the email was sent to AAPS members to inform them of Stewart's alleged "systematic campaign of harassment, defamation and intimidation against AAPS and its leadership."  (ECF No. 1, Ex. S.)  Accordingly, the allegedly defamatory statements contained in the March 28, 2012 email from the legal task force are not protected by the litigation privilege.

Defendants also argue that private membership organizations enjoy a qualified reporting privilege that protects the communications under Florida law. The Defendants assert that under Florida law, statements and communications relating to qualifications of applicants and disciplinary action in connection with the activities of such organizations are qualifiedly privileged communications—so long as they are made without malice. But, as previously stated, the Court applies California law to Stewart's defamation claims. Consequently, the Court need not consider this argument. The Court therefore **DENIES** Defendants motion to dismiss Sewart's seventh cause of action for defamation.

### E. Intentional interference with prospective economic advantage

Stewart alleges that the Defendants intentionally interfered with her prospective economic advantage because their wrongful actions resulted in the termination of her AAPS board certifications, which "entitled to participate in various networks which granted her access to serve as a provider to millions of patients across the nation." (Compl. ¶ 149.) Stewart asserts that she "will assuredly be excluded from several of these networks and will no longer be able to process claims for services rendered to patients." (*Id.*) Consequently, she argues, she will lose income for the remainder of her career.

The Defendants argue that Stewart has failed to set forth any facts establishing the existence of a business relationship between herself and any other party, much less the Defendants' knowledge of such a relationship.

California law prohibits third parties from intentionally interfering with any contract. *See Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal. 4th 1134, 1153 (2003). The elements of an intentional-interference claim are "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff

proximately caused by the acts of the defendant." *Id.* (quoting *Westside Ctr. Assoc. v. Safeway Stores 23, Inc.,* 42 Cal. App. 4th 507, 521–22 (Ct. App. 1996)).

To establish the first element, Stewart must allege the existence of "a specific prospective relationship, not [potential relationships] with a class of unknown investors or purchasers." *Westside,* 42 Cal. App. 4th at 520 n.15. The California Supreme Court limits the tort of intentional interference with prospective economic advantage to "protect[ing] the expectation that the relationship eventually will yield the desired benefit, not necessarily the more speculative expectation that a potentially beneficial relationship will arise." *Korea Supply,* 29 Cal.4th at 1153 (quoting *Westside,* 42 Cal. App. 4th at 524).

Stewart styles her intentional-interference claim as a lost opportunity: the Defendants' wrongful actions will result in her exclusion from physician networks, thus rendering her unable to contract with patients. This is insufficient. The problem with this lost-opportunity approach is that it "assumes what normally must be proved, i.e., that it is reasonably probable the plaintiff would have received the expected benefit had it not been for the defendant's interference." *Westside,* 42 Cal. App. 4th at 522. Stewart has failed to allege facts to show interference with an existing economic relationship, with identified physician networks, that hold the promise of the ability to contract with patients. Stewart's broad allegations of an expectancy relationship with networks and patients yet unknown merely allege a hope for an economic relationship and desire for future benefit. Consequently, the Court finds that Stewart has not pleaded sufficient facts to state an intentional-interference claim. The Court therefore **GRANTS** Defendants' motion to dismiss Stewart's eighth cause of action for intentional interference with prospective advantage.

### F. Indemnification

Stewart's ninth claim for relief seeks a declaration that AAPS has a duty to indemnify her for litigating this action. Stewart asserts that AAPS Bylaw section 15.02 mandates that AAPS indemnify her. AAPS moves to dismiss Stewart's claim

1  for indemnity, asserting that Stewart is not entitled to indemnification, because she
2  does not allege that she is or has ever been an AAPS board member, as required by
3  section 15.02.  Stewart makes no argument to the contrary in her Opposition.

4          Stewart alleges that on June 12, 2010, she was recognized by AASD—a
5  subspecialty academy of AAPS—as a Governor of AASD.  (Compl. ¶ 159.)  Stewart
6  was removed from serving as Governor of AASD on March 26, 2012.  (ECF No. 1, at
7  Ex. Q.)  She asserts that she has been a party to this action, the Florida action, and the
8  Florida Appeal while acting in her capacity as AASD Governor.  (*Id.* ¶ 160.)  Stewart
9  asks the court to construe the term "Officer" as used in 15.02 to include Governors of
10  subspecialty academies and certification boards.  (*Id.* ¶ 161.)

11          The plain language of section 15.02 limits indemnification to "any person made
12  a party to an action or proceeding, whether civil or criminal, *by reason of service as a*
13  *board member or officer of the association* . . . ."  (ECF No. 1, at Ex. Y.)  Nowhere in
14  her Complaint does Stewart allege that she was made party to any legal action by
15  reason of her service as an AASD Governor.  Stewart merely alleges that she was
16  party to the Florida action while she held the position of Governor of AASD.
17  (Compl.¶ 160.)

18          Moreover, Stewart ignores the plain language of section 15.02 which explicitly
19  provides for indemnification for officers of AAPS—and makes no mention of
20  subspecialty officers.   (ECF No. 1, at Ex. Y.)   Section 15.02 limits AAPS's
21  indemnification to "Board member[s] or officer[s] of the Association.   And
22  "Association" is defined in section 1.01.  (*Id.*)  Section 1.01 provides that the bylaws
23  will refer to the American Association of Physician Specialists, Inc." as the
24  "Association."  (*Id.*)  This is given further support by section 7.01 which provides that
25  "The officers of the Association shall be a President, an Immediate Past President, a
26  President-Elect, a Vice-President, a Secretary-Treasurer, and a Membership Officer."
27  (*Id.*)  It makes no mention of any subspecialty officers or governors.  Accordingly, the
28  / / /

Court **GRANTS** AAPS's motion to dismiss Stewart's ninth claim for relief for indemnification.

## V.    CONCLUSION

For the reasons discussed above, the Court **DENIES** AAPS's motion to dismiss Stewart's defamation and unfair-business-practices claims.  (ECF No. 47.)  The Court **GRANTS** AAPS's motion to dismiss Stewart's declaratory relief, breach of fiduciary duty, and indemnification claims **WITHOUT LEAVE TO AMEND**.  (*Id.*)  The Court also **GRANTS** AAPS's motion to dismiss Stewarts intentional-interference-with-prospective-economic advantage claim **WITH LEAVE TO AMEND**.  (*Id.*)

The Court **DENIES** the individual Defendants' motions to dismiss Stewart's defamation claim.  (ECF Nos. 49, 53, 55.)  The Court **GRANTS** Defendants' motion to dismiss Stewart's breach of fiduciary duty claim **WITHOUT LEAVE TO AMEND**.  (*Id.*).  The Court also **GRANTS** the individual Defendants' motion to dismiss Stewarts intentional-interference-with-prospective-economic advantage claim **WITH LEAVE TO AMEND**.  (*Id.*)  Stewart shall file her amended complaint no later than Monday, June 9, 2014.

**IT IS SO ORDERED.**

May 27, 2014

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**