O

# United States District Court
# Central District of California

PATRICIA STEWART, D.O.,

          Plaintiff,

   v.

AMERICAN ASSOCIATION OF
PHYSICIAN SPECIALISTS, INC.;
WILLIAM CARBONE; ROBERT
CERRATO; STEPHEN MONTES;
SUSAN SLOMINSKI; SVETLANA
RUBAKOVIC,

          Defendants.

Case № 5:13-cv-1670-ODW(DTBx)

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS [152] AND DENYING DEFENDANTS' MOTION TO STRIKE [112]**

## I.   INTRODUCTION

Plaintiff Patricia Stewart, D.O., is a certified dermatologist.  She originally filed suit against 17 Defendants, but only 6 remain in the instant action.  Pursuant to the Court's October 14, 2014 Order (ECF No. 147), the remaining Defendants filed a Consolidated Motion to Dismiss, outlining each Defendant's argument for dismissal of each applicable claim.  (ECF No. 152.)  For the reasons discussed below, the Court **GRANTS in part and DENIES in part** Defendants' Motions to Dismiss, and **DENIES** Defendants' Motion to Strike.[1]

---

[1] After carefully considering the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; L.R. 7-15.

## II.   FACTUAL BACKGROUND

Patricia Stewart is a licensed physician specializing in dermatology.  (Compl. ¶ 3.)  The American Association of Physical Specialists, Inc. ("AAPS") is a nonprofit corporation that certifies physicians in various medical specialties.  (*Id*. ¶¶ 4–5.) AAPS certification confers the honor, credibility, rights, and privileges of a qualified medical specialist and, consequently, lucrative career opportunities for physicians. (*Id*. ¶ 5.)   AAPS has several subspecialty academies for physicians specializing in different areas of medicine, including the American Academy of Specialists in Dermatology ("AASD").  (*Id*. ¶ 7.)

Stewart participated in and completed the AAPS training-certification program. (*Id*. ¶ 31.)   While in training, Stewart filed sexual harassment charges against her trainers.  (*Id*.)   Stewart alleges that AAPS retaliated by refusing to recognize her participation in the training program, which left her ineligible to sit for the dermatology certification exam.  (*Id*.)  Stewart filed a charge of discrimination against AAPS with the Equal Employment Opportunity Commission.  (*Id*. ¶ 33.)   After two years, AAPS agreed to allow Stewart to sit for the dermatology certification exam. (*Id*. ¶ 34.)   Stewart passed and became an AAPS member.   (*Id*.)

Stewart alleges that AAPS created a hostile work environment when officers on AAPS's leadership board circulated pornographic and racially biased emails.  (*Id.* ¶¶ 47–48.)  She alleges that the distribution of such inappropriate material, as well as alleged financial misconduct, prompted several physician members to investigate AAPS leadership.  (*Id.* ¶ 54.)  She further alleges that AAPS retaliated against these would-be whistleblowers by accessing confidential emails and using this evidence to suspend their memberships.  (*Id.* ¶¶ 55–56.)

Stewart alleges that when she called for the physician whistleblowers' reinstatement, AAPS took adverse actions against her.   AAPS allegedly filed a meritless defamation lawsuit against Stewart and another physician in Florida,

alleging that Stewart was part of a conspiracy to destroy AAPS.[2]  (Case No. 11-00494, Compl. ¶ 61.)  On March 26, 2012, AAPS allegedly removed Stewart from her elected position as AAPS Governor.  (*Id*. ¶ 62, Ex. Q.)  On March 28, 2012, Stephen Montes, Robert Cerrato, Bart Maggio, and Joseph Gallagher allegedly sent an email falsely accusing Stewart of campaigning to destroy AAPS.  (*Id*. ¶ 63, Ex. S.)  On May 30, 2012, Susan Slominski, Svetlana Rubakovic, Thomas Balshi, Lori Honeycutt, Robert Ilowite, and Ken Wallace allegedly sent another similar defamatory email.  (*Id*. ¶ 64, Ex. T.)

That same day, Cerrato and the members of the Disciplinary Committee— Montes, Wallace, and Maggio— allegedly used the defamatory correspondence as a pretext to terminate Stewart's membership in AAPS for participating in "conduct injurious to, and not in the best interests of AAPS," without notifying her of the meeting or providing her an opportunity to present evidence before the Board of Directors in her defense.  (*Id*. ¶ 66, Ex. V.)

Stewart alleges that the AAPS Board of Directors offered to permit her to present evidence in her defense at a June 9, 2012 meeting—after the Board had already voted to terminate her membership.  (*Id*. ¶ 67.)  Stewart further alleges that Cerrato prevented her from attending the annual AAPS meeting held on June 25, 2012 in Marina Del Rey, California. (*Id*. ¶ 69.)  Stewart also alleges that at the AAPS annual meeting, the Board, prompted by Cerrato and Carbone, made a defamatory presentation to the entire AAPS membership.  They allegedly falsely stated that Stewart had authored and published a subversive Internet blog.  (*Id*. ¶ 71.)  She alleges that the false attribution harmed her reputation within the organization.  (*Id*. ¶ 72.)

On September 16, 2013, Stewart filed suit against AAPS and 17 individual defendants.  (ECF No. 1.)  On May 15, 2014, the Court granted the Motions to Dismiss of Defendants Anthony Durante, Joseph Gallagher, Brian Feaver, Douglas

---

[2] The trial court in the Florida suit concluded that it lacked personal jurisdiction over Stewart.  AAPS appealed to Florida's Second District Court of Appeal.  On December 17, 2014, the Court of Appeal affirmed the trial court's ruling.  (ECF No. 157.)

1   Marciniak, Thomas Balshi, Robert Ilowite, Ken Wallace, and Anthony Russo for lack
2   of personal jurisdiction.  (ECF No. 94.)  On May 27, 2014, the Court denied AAPS'
3   Motion to Dismiss Stewart's defamation and unfair business practices claims, and
4   granted AAPS' Motion to Dismiss Stewart's declaratory relief, breach of fiduciary
5   duty, and indemnification claims without leave to amend.  (ECF No. 95.)  The Court
6   also granted AAPS' Motion to Dismiss Stewart's intentional interference with
7   prospective economic advantage claim with leave to amend.  (*Id*.)  The Court denied
8   the individual Defendants' Motions to Dismiss Stewart's defamation claim, and
9   granted Defendants' Motions to Dismiss Stewart's breach of fiduciary duty claim
10   without leave to amend.  (*Id*.)  The Court also granted the individual Defendants'
11   Motions to Dismiss Stewart's intentional interference with prospective economic
12   advantage claim with leave to amend.  (*Id*.)

13       On July 21, 2014, Stewart filed her First Amended Complaint ("FAC") and,
14   after meeting and conferring with opposing counsel, dismissed Bart Maggio, William
15   Anderson, and Lori Honeycutt.  (ECF Nos. 100, 103, 107, 119.)  Only Defendants
16   AAPS, William Carbone, Robert Cerrato, Stephen Montes, Susan Slominski, and
17   Svetlana Rubakovic remain in the instant action.  (ECF No. 148.)

18       Stewart alleges: (1) breach of contract, (2) injunctive relief and damages
19   pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, (3) violations
20   of the Unruh Civil Rights Act, California Civil Code §§ 51, 52, (4) violations of
21   California Government Code 12940 (h), (5) intentional misrepresentation and false
22   promise, (6) defamation, (7) intentional interference with prospective economic
23   advantage, and (8) unfair business practices in violation of California Business &
24   Professions Code § 17200.  (ECF No. 148.)

25       On August 25, 2014, Defendants filed a Motion to Strike Portions of the First
26   Amended Complaint.  (ECF No. 112.)  Pursuant to the Court's October 14, 2014
27   Order, Defendants filed a Consolidated Motion to Dismiss, outlining each Defendant's
28   argument for dismissal of each applicable claim.  (ECF No. 152.)  Stewart timely

1   opposed each Motion to Dismiss.  (ECF Nos. 122-126.)

2   ## III.   LEGAL STANDARD

3   ### A.   Motion to Dismiss

4   Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a

5   complaint for lack of a cognizable legal theory or insufficient facts pleaded to support

6   an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d

7   696, 699 (9th Cir. 1990).   To survive a dismissal motion, a complaint need only

8   satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain

9   statement of the claim.  *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003).   The

10   factual "allegations must be enough to raise a right to relief above the speculative

11   level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).   That is, the complaint

12   must "contain sufficient factual matter, accepted as true, to state a claim to relief that

13   is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

14   The determination whether a complaint satisfies the plausibility standard is a

15   "context-specific task that requires the reviewing court to draw on its judicial

16   experience and common sense." *Id.* at 679.   A court is generally limited to the

17   pleadings and must construe all "factual allegations set forth in the complaint . . . as

18   true and . . . in the light most favorable" to the plaintiff.  *Lee v. City of L.A.*, 250 F.3d

19   668, 688 (9th Cir. 2001).   But a court need not blindly accept conclusory allegations,

20   unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden*

21   *State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

22   As a general rule, a court should freely give leave to amend a complaint that has

23   been dismissed.  Fed. R. Civ. P. 15(a).  But a court may deny leave to amend when

24   "the court determines that the allegation of other facts consistent with the challenged

25   pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well*

26   *Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1986); *see Lopez v. Smith*, 203 F.3d

27   1122, 1127 (9th Cir. 2000).

28   / / /

**B.      Motion to Strike**

Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  The decision whether to grant a motion to strike is made at the court's discretion.  *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993), *rev'd on other grounds* in  *Fogerty v. Fantastic, Inc.*, 510 U.S. 517 (1994)).  In using its discretion, the court must view the pleadings in the light most favorable to the non-moving party.  *In re 2TheMart.com Sec. Litig.*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000).

Courts may grant a motion to strike "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ."  *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quoting *Fantasy*, 984 F.2d at 1527 (9th Cir. 1993).  Courts may also grant such a motion in order to streamline the resolution of the action and focus the jury's attention on the real issues in the case.  *Fantasy*, 984 F.2d at 1528.  Motions to strike are generally disfavored due to the limited role that pleadings play in federal practice, and because they are often used as a delaying tactic.  *Cal. Dept. of Toxic Substances Control v. Alco Pacific, Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002).

## IV.      DISCUSSION

**A.      Motions to Dismiss**

*1.      AAPS*

AAPS moves to dismiss Plaintiff's Breach of Contract claim and Counts One, Two, and Five of her Intentional Misrepresentation and False Promise ("fraud") claim. (Mot. 1.)

Breach of Contract

Plaintiff alleges that pursuant to Florida law, the revision of the AAPS Bylaws, enacted June 25, 2011, constituted an enforceable contract between AAPS and Plaintiff.  (FAC ¶ 108.)  Pursuant to AAPS Bylaws § 3.05, before AAPS could

terminate Plaintiff's membership, AAPS was required to provide Plaintiff 30 days' notice and an opportunity to appear before the Board of Directors to present evidence that she should be permitted to remain a member of the association. (*Id.* ¶ 109.) Plaintiff alleges that AAPS breached the agreement by terminating her membership without notice or an opportunity to be heard. (*Id.* ¶ 110.)

AAPS argues that "by adding a new breach of contract claim to her amended pleading," Plaintiff has "recast her original declaratory relief claim, which was based on the same set of facts and alleged procedural defects or noncompliance with the Bylaws…to bypass and get around the applicable statute of limitations period set forth in Florida Statute § 617.0607(3) for commencing an action challenging a termination." (Mot. 3-4.) In the original Complaint, Plaintiff sought declaratory relief to set aside the termination of her membership. (Compl. ¶ 87.) This Court dismissed Plaintiff's claim for declaratory relief without leave to amend because the statutorily prescribed one-year period within which to challenge the alleged wrongful termination of her membership had expired. (ECF No. 95.)

Plaintiff is now seeking damages for injuries suffered from the breach of contract, not reinstatement of her membership. (Opp'n 2.) Plaintiff contends that "[n]othing in Florida Statute § 617.0607(3) states that it is intended to preempt the contractual rights of parties who have entered into a written agreement." (*Id.*)

AAPS "acknowledges that [the] Florida statute 617.0607 does not require that a cause of action seeking <u>damages</u> for breach of contract be filed within one year, and the plaintiff does indeed seek damages in her claim." (Reply 2.) However, AAPS argues that Plaintiffs seeks "declaratory relief that is time-barred" and asks that the Court strike subparagraphs a-c of paragraph 113. (*Id.*)

The Statute states, in relevant part:

> "(1) A member of a corporation may not be expelled or suspended, and a membership in the corporation may not be terminated or suspended, except pursuant to a procedure

that is fair and reasonable and is carried out in good faith;

(3)  Any  proceeding  challenging  an  expulsion,
suspension, or termination, including a proceeding in which
the defective notice is alleged, must be commenced within 1
year after the effective date of the expulsion, suspension, or
termination."

Fla. Stat. Ann. § 617.0607.

AAPS concedes that the Statute does not cover Plaintiff's request for damages for breach of contract, yet argues that it covers Plaintiff's request for declaratory relief even though the relief sought does not include reinstatement of her membership.  Nowhere in the Statute does it say or suggest that the applicability of the one-year limitations period depends on whether a plaintiff seeks declaratory relief.  AAPS fails to explain under what interpretation of the Statute the limitations period *does not* apply to Plaintiff's request for damages for breach of contract, but *does* apply to her request for declaratory relief, which does not seek reinstatement of her membership.

Therefore, the Court **DENIES AAPS' Motion to Dismiss and Motion to Strike subparagraphs a-c of paragraph 113**.

Count One – Misrepresentation that AAPS Board Certification is Comparable to ABMS or AOA Board Certification

Plaintiff alleges that AAPS and its agents represented to her that AAPS was a nationally recognized board of certification that offered superior training and operated according to higher ethical standards than ABMS and AOA, the other two nationally recognized boards of certification for physicians.  (FAC ¶ 144.)

AAPS argues that the Court should dismiss Count One of Plaintiff's Fifth Cause of Action because it fails to meet the fraud allegations specificity requirement.  (Mot. 6.)

Plaintiff contends that Count One is not defective because Plaintiff alleges in the FAC that the CEO of AAPS and authorized representatives made the fraudulent representations.  (Opp'n 4; FAC ¶ 22.)  AAPS "does not object to the plaintiff being granted leave to amend to cure the pleading defects as to this cause of action."  (Reply 2.)

The specificity requirement in a "fraud action against a corporation requires the plaintiff to allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written."  *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153, 157 (1991).  The Plaintiff in *Tarmann* generally alleged that the people who made the fraudulent representations were "authorized agents of State Farm…cloaked with such authority," but admitted that she did not know their names. The Court noted that the specificity requirement is "relaxed when the allegations indicate that 'the defendant must necessarily possess full information concerning the facts of controversy.'"  *Id.* at 157-158 (quoting *Bradley v. Hartford Acc. & Indem. Co.*, 30 Cal. App. 3d 818, 825 (1973).  However, the Court found the exception inapplicable when the corporation "has no more reason to know who made the allegedly false representations" to Plaintiff than Plaintiff.  *Id.* at 158.

In the FAC, Plaintiff states that the CEO of AAPS and "authorized representatives" made the fraudulent representations but does not state when the representations were made.  (FAC ¶ 22.)  The CEO of AAPS, William Carbone, is a named defendant in the instant action.  (*Id.* ¶ 30.)  Plaintiff must provide the name of other authorized representatives and when the representations were made.

Therefore, the Court **DISMISSES Count One of Plaintiff's Fifth Cause of Action WITH Leave to Amend**.

/ / /

/ / /

/ / /

9

<u>Count Two –Misrepresentation That AAPS is an Ethical Organization That Holds Its Staff and Members to Abide By its Espoused Code of Ethics</u>

Plaintiff alleges that AAPS, through its agents, represented to her that AAPS held itself to higher ethical standards than ABMS or AOA to induce her to abandon her position in an ABMS-accredited residency program and other options to be trained in an ABMS and AOA-approved residency program.  (*Id*. ¶ 150.)   Plaintiff further alleges that AAPS does not hold itself or its members to a code of ethics, citing as evidence "that her AAPS affiliated residency trainers were permitted to sexually harass her without experiencing any consequences." (*Id*. ¶ 151.)  Plaintiff also cites AAPS' failure to investigate or punish Carbone's alleged circulation of pornographic material, and AAPS' termination of her board certification.  (*Id*. ¶ 153.)

AAPS argues that the Court should dismiss Count Two of Plaintiff's Fifth Cause of Action because it is barred by the statute of limitations.  (Mot. 7.)  AAPS points out that the alleged sexual harassment occurred in 1997, AAPS allegedly refused to permit Plaintiff to sit for the board certification examination in July 1998, and other alleged unethical conduct occurred well before August 16, 2010, three years before she filed the instant action.  (Mot. 8.)

Plaintiff contends that it was only in 2012—when AAPS allegedly terminated her membership without cause and without following proper procedure—that she realized AAPS is an unethical organization and its unethical roots could be traced back to when she was recruited to join the organization.  (Opp'n 6.)  Before 2012, "[e]very time a problem rose to the level of a potential cause of action, AAPS fixed it, so that she had no demonstrable injury, and no need for, or grounds for a lawsuit." (*Id*.)

Plaintiff alleges violations of the common law tort of fraud.  Under California law, the statute of limitations for fraud is three years.  Cal. Civ. Code § 338(d).  The limitations period does not start to run "until the discovery, by the aggrieved party, of the facts constituting the fraud."  *Id*.   "[T]o be actionable, a misrepresentation or

concealment must induce justifiable reliance and resulting damage." *Magpali v. Farmers Group, Inc.*, 48 Cal. App. 4th 471, 482 (1996).

By AAPS' logic, the statute of limitations started to run after the first instance of alleged misconduct because Plaintiff discovered, or should have discovered, that she had be defrauded into joining an unethical organization.  The Court does not agree that after a single instance of alleged misconduct that Plaintiff should have concluded that AAPS was an unethical organization.  Plaintiff could have reasonably believed that, while AAPS inadequately handled her allegations of sexual harassment, AAPS was an ethical organization.

AAPS argues that regardless of AAPS' subsequent correction of alleged misconduct, "the fact that [AAPS] had supposedly engaged in all kinds of nefarious conduct over an extended period of time would have informed a reasonable person that she had joined an unethical organization." (Reply 5-6.)  The Court does not agree that AAPS' subsequent correction of alleged misconduct is irrelevant to a reasonable determination of whether AAPS is an unethical organization.  Should the instant action go to trial, AAPS will likely cite its repeated correction of alleged misconduct as evidence that it is an ethical organization and did not fraudulently represent itself.

Plaintiff was reasonable to conclude that AAPS was an ethical organization until AAPS allegedly terminated her membership without cause and without following proper procedure.  The Court remains unpersuaded that Plaintiff should have reached this conclusion after the first instance of alleged misconduct or after instances of alleged and subsequently corrected misconduct.

Therefore, the Court **DENIES AAPS' Motion to Dismiss Count Two of Plaintiff's Fifth Cause of Action**.

/ / /

/ / /

/ / /

/ / /

<u>Count Five – Misrepresentation That Board Certification Was Not Affected By the Termination of Membership</u>

Plaintiff alleges that AAPS willfully and intentionally misrepresented to her that the Board of Directors' decision to terminate her membership in AAPS would have no effect on her status as a board certified dermatologist.  (FAC ¶ 169.)

AAPS argues that the Court should dismiss Count Five of Plaintiff's Fifth Cause of Action because it fails to meet the fraud allegations specificity requirement. (Mot. 8.)

Plaintiff contends that she stated the intentional misrepresentation was made by the Board of Directors and provided a copy of the letter containing the misrepresentation.  (*Id*, Ex. AA.)

The Court incorporates its earlier discussion of the specificity requirement for asserting fraud allegations against a corporation.

In the FAC, Plaintiff references the Board of Directors but does not name the members of the Board when the June 18, 2012 letter was drafted.  Similarly, no names are referenced in the letter.  This does not meet the specificity requirement.  Plaintiff must provide the names of the individuals who served on the Board when the letter was drafted.

Therefore, the Court **DISMISSES Count Five of Plaintiff's Fifth Cause of Action WITH Leave to Amend**.

2.    *William Carbone, Stephen Montes, Robert Cerrato, Susan Slominski, and Svetlana Rubakovic – Unfair Businesses Practices*

William Carbone, Stephen Montes, Robert Cerrato, Susan Slominki, and Svetlana Rubakovic move to dismiss Plaintiff's Unfair Business Practices claim. (Mot. 8.)  Plaintiff alleges the Unfair Business Practices claim against all Defendants. All individual Defendants argue that the claim should be dismissed because no relief is sought against them.  Plaintiff concedes this point but states that a paragraph was inadvertently omitted and the defect can be cured through amendment.  (Opp'n 2.)

Therefore, the Court **DISMISSES Plaintiff's Eighth Cause of Action Against All Individual Defendants WITH Leave to Amend**.

> 3.      *Robert Cerrato and AAPS – Intentional False Promise That AAPS Would Provide Plaintiff An Appeal Hearing Before A Panel of Past Presidents*

Robert Cerrato and AAPS move to dismiss Count Four of Plaintiff's fraud claim.  (Mot. 10.)

Plaintiff alleges that AAPS should be estopped from asserting the statute of limitations for the filing of a claim for wrongful termination because any delay in filing beyond the one year deadline was a direct result of the fraudulent representations of its president.  (FAC ¶ 167.)

Plaintiff alleges that on July 27, 2012, Robert Cerrato sent her a letter stating that her request for an appeal of the decision of the Board of Directors to terminate her membership had been granted.  (*Id*. ¶ 164.)  She further alleges that she was told a date for the hearing would be set once the Board was able to convene past presidents to conduct the hearing.  (*Id*.)  Because Plaintiff was required to exhaust her administrative remedies before she could file suit against AAPS, she relied on Cerrato's July 27, 2012 promise of an appeal hearing and did not file suit for wrongful termination.  (*Id*. ¶¶ 164-165.)

Cerrato and AAPS argue that Plaintiff realized in March or April of 2013 that AAPS was not going to give her an appeal hearing and any reliance on Cerrato's letter was unreasonable. (Mot. 11.)

Plaintiff contends that "if the running of the statute of limitations is tolled by the detrimental reliance until at least March of 2013, she should have had until March 2014 to file her claim."  (Opp'n 7.)  Plaintiff also contends that her reliance on Cerrato's letter was reasonable because of Cerrato's position of authority.  (*Id*.)

When she realized in March or April of 2013 that she was not going to get an appeal hearing, her administrative remedies were exhausted and the limitations period started to run, giving Plaintiff one year—March or April 2014—to file suit.  Plaintiff

1    filed suit in September 2013.

2         Therefore, the Court **DENIES Cerrato and AAPS' Motion to Dismiss Count**

3    **Four of Plaintiff's Fifth Cause of Action**.

4         *4.    Susan Slominski and Svetlana Rubakovic – Defamation*

5         Susan Slominski and Svetlana Rubakovic move to dismiss Plaintiff's

6    Defamation claim. (Mot. 11.)

7         Plaintiff alleges that Slominski and Rubakovic were signatories to a letter that

8    as early as March 28, 2012 falsely informed members of AAPS that Plaintiff "played

9    an active role" in a "campaign to destroy AAPS." (FAC ¶ 174.) Plaintiff further

10   alleges that the statements "were known by their publishers to be false, and [were]

11   published for the malicious purpose of harming the Plaintiff's reputation, in order to

12   discredit her and the effect of her opposition to their unethical practices that [were]

13   harming individuals and the entire organization." (*Id*.) On May 30, 2012, the letter

14   was shown to the Board of Directors and the Disciplinary Committee, via wire and

15   fax, at which time her membership in AAPS was terminated. (*Id*. ¶¶ 174-175.)

16        Slominski and Rubakovic argue that the Court should dismiss Plaintiff's

17   Defamation claim against them because the FAC does not allege that the letter "gave

18   rise to [Plaintiff] being shunned or avoided," and "[n]othing about it would result in

19   damage to her reputation or deter others from associating or dealing with her." (Mot.

20   13-14.)

21        Pursuant to Florida and California law, "defamation consists of an 'unprivileged

22   publication of false statements which naturally and proximately result in injury to

23   another." *Wolfson v. Kirk*, 2763 So.2d 774, 776 (1973).

24        Plaintiff alleges that shortly after the letter was shown to the Board of Directors

25   and Disciplinary Committee, her membership in AAPS was terminated. Although

26   Plaintiff will have to prove that the letter proximately caused the Board to terminate

27   her membership, that is not an issue for the Court at this time. Plaintiff's defamation

28   allegations are sufficient to survive a Motion to Dismiss.

1  Therefore, the Court **DENIES Slominski and Rubakovic's Motion to**
2  **Dismiss**.

3  **B.     Motion to Strike**

4  All Defendants in the instant action filed a Motion to Strike Portions of the
5  FAC.  (ECF No. 112.)  Defendants argue that the Court should strike numerous parts
6  of the FAC because they are "redundant, immaterial, scandalous, or otherwise
7  improper."  (Mot. 2.)  The Court finds that the numerous statements Plaintiff has
8  alleged as true are relevant to the instant action and made in good faith.  Therefore, the
9  Court **DENIES Defendants' Motion to Strike**.

10  The Court notes that Plaintiff's allegations regarding Carbone's distribution of
11  pornography are based on second-hand information.   Plaintiff's allegations are
12  relevant to the instant action only to the extent that she made the same allegations to
13  AAPS and AAPS allegedly retaliated.

14  **V.     CONCLUSION**

15  For the reasons discussed above, the Court **GRANTS in part and DENIES in**
16  **part** Defendants' Motions to Dismiss and **DENIES** Defendants' Motion to Strike.
17  (ECF Nos. 152, 112.)

18  / / /
19  / / /
20  / / /
21  / / /
22  / / /
23  / / /
24  / / /
25  / / /
26  / / /
27  / / /
28  / / /

The Court **DENIES** AAPS' Motion to Dismiss and Motion to Strike subparagraphs a-c of paragraph 113, **DISMISSES** Count One of Plaintiff's Fifth Cause of Action **WITH Leave to Amend**, **DENIES** AAPS' Motion to Dismiss Count Two of Plaintiff's Fifth Cause of Action, **DISMISSES** Count Five of Plaintiff's Fifth Cause of Action **WITH Leave to Amend**, **DISMISSES** Plaintiff's Eighth Cause of Action Against the Individual Defendants **WITH Leave to Amend**, **DENIES** Cerrato and AAPS' Motion to Dismiss Count Four of Plaintiff's Fifth Cause of Action, and **DENIES** Slominski and Rubakovic's Motion to Dismiss.  Plaintiff shall have until no later than **Thursday, January 22, 2015 to amend the FAC**.

　　　　**IT IS SO ORDERED.**


January 8, 2015

_____
　　　　**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**