William A. Okerblom, Esq. , (State Bar No. 236053)
The Law Office of William A. Okerblom
1145 East Clark Ave, Suite H
Santa Maria, CA 93455
Phone (805) 478-6570
Fax (866) 317-4919
Drlaw07@aol.com

Attorney for Plaintiff
Patricia Stewart, D.O.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICIA STEWART, D.O.,<br><br>     Plaintiff,<br><br>     v.<br><br>AMERICAN ASSOCIATION OF PHYSICIAN SPECIALISTS, INC., WILLIAM CARBONE; ROBERT CERRATO; STEPHEN MONTES; SVETLANA RUBAKOVIC and DOES 1-100<br><br>     Defendants. | Case No. EDCV13-1670-ODW (DTBx)<br>Dept.: 11<br>Judicial Officer: Otis D. Wright II<br>Magistrate: James T. Bristow<br><br>**PLAINTIFF'S PROPOSED JURY INSTRUCTIONS** |

PLAINTIFF has filed her jury instructions one day late due to a mistake. At 3:49 PM on 9/28/15, Leila Rossetti sent Plaintiff's counsel in which she stated that she was going to file the Plaintiff's proposed jury instructions as the proposed Joint Instructions. Plaintiff's counsel mistakenly thought she was agreeing to file Plaintiff's proposed instructions as the joint instructions. In reality, she was referring to only certain ones that she had identified by number. Plaintiff's counsel did not read her email closely enough and is at fault for the error. In any case, Plaintiff submits the attached proposed jury instructions in hopes that they will be helpful to the Court and the jury in properly interpreting the facts presented in this case.

           THE LAW OFFICE OF WILLIAM OKERBLOM

             /s/ William Okerblom

           WILLIAM OKERBLOM        9/29/15

## 300. Breach of Contract—Introduction

| Request by Stewart | X | Request by Defendant | | Requested by | |
|---|---|---|---|---|---|
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | | Judge | |

Instruction No. **110**

**STEWART claims that she and AAPS entered into a contract that STEWART
claims that AAPS breached this contract by FAILING TO PROVIDE HER THE
RIGHTS SPECIFIED IN THE AAPS BYLAWS SECTION 3.05.**

**STEWART also claims that AAPS's breach of this contract caused harm to  STEWART
for which AAPS should pay. AAPS  denies THAT IT FAILED TO PROVIDE HE THOSE
RIGHTS. AAPS also claims that the contract damages claims are subject to a one year
statute of limitations.**

CACI Pg. 73

**PLAINTIFF'S PROPOSED JURY INSTRUCTIONS  2**

### 302. Contract Formation—Essential Factual Elements

| Request by Stewart | X | Request by Defendant | | Requested by | |
|---|---|---|---|---|---|
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | | Judge | |

Instruction No.  |||

**Stewart claims that the parties entered into a contract. This contract is based upon the legal doctrine that the formal bylaws of a corporation and its members. To prove that a contract was created, Stewart must prove the following:**

**1. That AAPS is a corporation.**

**2. It has formal bylaws.**

**3. That she was a member of the corporation AAPS.**

CACI Pg. 77

## 303. Breach of Contract—Essential Factual Elements

| Request by Stewart | X | Request by Defendant | | Requested by | |
|---|---|---|---|---|---|
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | | Judge | |

Instruction No. **#2**

**To recover damages from AAPS for breach of contract, Stewart must prove all of the following:**

1. **That Stewart and AAPS entered into a contract;**

2. **That Stewart did all, or substantially all, of the significant things that the contract required her to do; or that Stewart was excused from doing.**

3. **That AAPS failed to do something that the contract required it to do; and**

4. **That Stewart and was harmed by AAPS's breach of contract.**

CACI Pg. 80

## 324. Anticipatory Breach

| Request by Stewart | X | Request by Defendant | | Requested by | |
|---|---|---|---|---|---|
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | | Judge | |

Instruction No. **13**

A party can breach, or break, a contract before performance is required by clearly and positively indicating, by words or conduct, that he or she will not or can not meet the requirements of the contract.

If Stewart proves that she would have been able to fulfill the terms of the contract and that AAPS clearly and positively indicated, by words or conduct, that it would not or could not meet the contract requirements, then AAPS breached the contract.

CACI 119

**PLAINTIFF'S PROPOSED JURY INSTRUCTIONS 5**

**325. Breach of Implied Covenant of Good Faith and Fair Dealing—**

**Essential Factual Elements**

| Request by Stewart | X | Request by Defendant | | Requested by | |
|---|---|---|---|---|---|
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | | Judge | |

Instruction No. **114**

In every contract or agreement there is an implied promise of good faith and fair dealing. This means that each party will not do anything to unfairly interfere with the right of any other party to receive the benefits of the contract; however, the implied promise of good faith and fair dealing cannot create obligations that are inconsistent with the terms of the contract. Stewart claims that AAPS violated the duty to act fairly and in good faith. To establish this claim,

Stewart must prove all of the following:

1. That Stewart and AAPS entered into a contract;

2. That Stewart did all, or substantially all of the significant things that the contract required her to do, or that she was excused from having to do those things;

3. That AAPS unfairly interfered with Stewart's right to receive the benefits of the contract; and

4. That Stewart was harmed by AAPS's conduct.

---

CACI Pg.121

**PLAINTIFF'S PROPOSED JURY INSTRUCTIONS  6**

## 315. Interpretation—Meaning of Ordinary Words

| Request by Stewart | X | Request by Defendant | X | Requested by | |
|---|---|---|---|---|---|
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | | Judge | |

Instruction No. **115**

**You should assume that the parties intended the words in their contract to have their usual and ordinary meaning unless you decide that the parties intended the words to have a special meaning.**

CACI Pg. 104

## 320. Interpretation—Construction Against Drafter

| Request by Stewart | X | Request by Defendant | | Requested by | |
|---|---|---|---|---|---|
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | | | |
| | | | | Judge | |

Instruction No. **16**

**In determining the meaning of the words of the contract, you must first consider all of the other instructions that I have given you. If, after considering these instructions, you still cannot agree on the meaning of the words, then you should interpret the contract against the party that drafted the disputed words/the party that caused the uncertainty.**

CACI Pg. 320

**PLAINTIFF'S PROPOSED JURY INSTRUCTIONS  8**

**318. Interpretation—Construction by Conduct**

| Request by Stewart | X | Request by Defendant | | Requested by | |
|---|---|---|---|---|---|
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | | Judge | |

Instruction No. **117**

**In deciding what the words in a contract meant to the parties, you may consider how the parties acted after the contract was created but before any disagreement between the parties arose.**

CACI Pg. 108

**PLAINTIFF'S PROPOSED JURY INSTRUCTIONS 9**

## 317. Interpretation—Construction of Contract as a Whole

| Request by Stewart | X | Request by Defendant | X | Requested by | |
|---|---|---|---|---|---|
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | Judge | | |

Instruction No. **118**

In deciding what the words of a contract meant to the parties, you should consider the whole contract, not just isolated parts. You should use each part to help you interpret the others, so that all the parts make sense when taken together.

CACI Pg. 317

**PLAINTIFF'S PROPOSED JURY INSTRUCTIONS  10**

## 350. Introduction to Contract Damages

| Request by Stewart | X | Request by Defendant | | Requested by | |
|---|---|---|---|---|---|
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | | Judge | |

Instruction No. **119**

**If you decide that Stewart has proved her claim against AAPS for breach of contract, you also must decide how much money will reasonably compensate Stewart for the harm caused by the breach. This compensation is called "damages." The purpose of such damages is to put Stewart in as good a position as she would have been if AAPS had performed as promised.**

**To recover damages for any harm, Stewart must prove that when the contract was made, both parties knew or could reasonably have foreseen that the harm was likely to occur in the ordinary course of events as result of the breach of the contract.**

**Stewart also must prove the amount of her damages according to the following instructions. She does not have to prove the exact amount of damages. You must not speculate or guess in awarding damages.**

**Stewart claims damages for past and future lost earnings.**

**In addition, Stewart claims damages for the return of any payments that she made to AAPS after her membership and board certification were revoked, including alleged certification payments and special legal assessments and she also claims special damages, as stated in instruction number 351.**

CACI Pg. 147

**353. Loss of Profits—Some Profits Earned**

| Request by Stewart | X | Request by Defendant | | Requested by | |
|---|---|---|---|---|---|
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | | | |
| | | | | Judge | |

Instruction No. **10**

To recover damages for lost profits, Stewart must prove that it is reasonably certain she would have earned more profits but for AAPS's breach of the contract.

To decide the amount of damages for lost profits, you must:

1. First, calculate Stewart's estimated total profit by determining the gross amount she would have received if the contract had been performed, and then subtracting from that amount the costs [including the value of the [labor/materials/rents/expenses/interest on loans invested in the business]] Stewart would have had if the contract had been performed;

2. Next, calculate Stewart's actual profit by determining the gross amount she actually received, and then subtracting from that amount Stewart's actual costs [including the value of the [labor/materials/rents/expenses/interest on loans invested in the business]]; and

3. Then, subtract Stewart's actual profit, which you determined in the second step, from her estimated total profit, which you determined in the first step. The resulting amount is Stewart's lost profit.

**PLAINTIFF'S PROPOSED JURY INSTRUCTIONS  12**

**You do not have to calculate the amount of the lost profits with mathematical precision, but there must be a reasonable basis for computing the loss.**

---

*New September 2003*

**PLAINTIFF'S PROPOSED JURY INSTRUCTIONS  13**

## 359. Present Cash Value of Future Damages

| Request by Stewart | X | Request by Defendant | | Requested by | |
|---|---|---|---|---|---|
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | | Judge | |

Instruction No. **121**

**To recover for future harm, Stewart must prove that the harm is reasonably certain to occur and must prove the amount of those future damages. The amount of damages for future harm must be reduced to present cash value. This is necessary because money received now will, through investment, grow to a larger amount in the future. AAPS must prove the amount by which future damages should be reduced to present value.**

**To find present cash value, you must determine the amount of money that, if reasonably invested today, will provide Stewart with the amount of her future damages.**

**[You may consider expert testimony in determining the present cash value of future damages.] [You must use [the interest rate of percent/ [and] [*specify other stipulated information*]] agreed to by the parties in determining the present cash value of future damages.] <u>We have an expert who will testify.</u>**

CACI Pg. 170

## 351. Special Damages

| Request by Stewart | X | Request by Defendant | | Requested by | |
|---|---|---|---|---|---|
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | | | |
| | | | | Judge | |

Instruction No. **122**

   Stewart also claims damages for [*see below*] . To recover for this harm, Stewart must prove that when the parties made the contract, AAPS knew or reasonably should have known of the special circumstances leading to the harm.

Loss of professional reputation resulting from unwarranted disciplinary action of revocation of her membership in her professional society.

Loss of Board certification due to wrongful disciplinary with the effect and resulting on her ability to be credentialed as a specialist in dermatology for purposes of contracting, privileges and employment.

Shame and embarrassment due to wrongful discipline that she has a duty to disclose

Loss of employment opportunities.

Increased malpractice exposure risk.

Higher cost of malpractice insurance.

CACI Pg. 150

### 3060. Unruh Civil Rights Act—Essential Factual Elements
### (Civ. Code, §§ 51, 52)

| Request by Stewart | X | Request by Defendant | | Requested by | |
|---|---|---|---|---|---|
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | | _____ | |
| | | | | Judge | |

**Instruction No.  123**

**Stewart claims that AAPS denied her full and equal advantages / facilities / privileges / services because of her sex. To establish this claim, Stewart must prove all of the following:**

1. **That AAPS denied, aided or inc, ited a denial of / discriminated or made a distinction that denied full and equal advantages / facilities / privileges / services to Stewart in the following actions:**

1) AAPS refused to acknowledge her documentation of training as meeting the requirements to take the board certification examination in the same manner as they did men.  She was not entitled to submit evidence of training that was not notarized, whereas men were permitted to do so.

2) AAPS did not provider her the questions and answers to the certification examination, which was necessary to know in order to pass the examination. Male candidates received the questions and answers and were thus able to pass the exam and become a Dermatologist, while she was not.

3) Though she was nominated to run for election to the office of House of delegates representative and Academy representative to the Board of Directors Dermatology Academy meeting on January 10, 2012, AAPS invalidated her nomination for office on the basis of her sex by retroactively cancelling the entire meeting in AAPS at which she was nominated, without informing her that they were doing so.  The pretext that they created was without merit, as is explained in the opinion of Plaintiff's Parliamentary Authorityexpert, Leonard Young.

4) AAPS did not provide sufficient postage on a letter notifying the Plaintiff that she was required to sign and return the confidentiality agreement by February 10ᵗ 2012 in order to be able to remain in her elected office in AAPS. In so doing, they insured that she would not be able to remain in office. AAPS placed sufficient postage on the notification letters sent toi male candidates so that they had an opportunity to sign the agreements and remain in office. Even though Stewart signed and returned the agreement as soon as she received it, AAPS would not accept it, despite knowing that they had caused her late return by not placing enough postage on the notification letter.

5) Not provide her with a fair disciplinary procedure during the disciplinary process they put her through in June of 2012, while males identically situated were entitled to perform have their full rights—including to perform discovery before being discipline and were consequently never disciplined, while the two females were summarily terminated from the organization.

6) Refuse to provide the plaintiff her rights under the Bylaws (Section 3.05)— including giving her the time that she deemed was necessary for to present the evidence that she wanted to be permitted to the show the Board of Directors why she should be permitted to remain a member in good standing of the Association.

7) Bar her from entering and being present at the Board of Directors meeting in Marina Del Rey, where the members were lead to believe she was being disciplined by the Board of Directors and that she was being provided the right to present evidence in her defense if such evidence existed.

**2. That a substantial motivating reason for AAPS's conduct was Stewarts's sex.**

**3. That Stewart was harmed;**

**and**

**4. That AAPS's conduct was a substantial factor in causing Stewart's harm.**

**PLAINTIFF'S PROPOSED JURY INSTRUCTIONS 17**

## 2505. Retaliation
## Government Code 12940(h)

| Request by Stewart | X | Request by Defendant | | Requested by | |
|---|---|---|---|---|---|
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | | | |

Judge

Instruction No. **124**

**2505. Retaliation—Essential Factual Elements (Gov. Code, § 12940(h))**

Stewart claims that AAPS retaliated against her for opposing discriminatory and retaliatory practices within and by AAPS and its leadership.

To establish this claim, Stewart must prove all of the following:

1. That Stewart opposed discriminatory and retaliatory conduct by making complaints and opposed discriminatory and retaliatory practices by AAPS and its leadership;

2. That AAPS removed Stewart from office, prevented her from running for office, denigrated her publically and expelled her from the organization;

2. That Stewart's advocacy for civil liberties for members and employees who were being improperly treated by AAPS was a substantial motivating reason for AAPS's decision to remove Stewart from office, preventing her from running for office and then to expel her from the organization and to revoke her board certification;

3. That Stewart was harmed; and that

4. That AAPS's conduct was a substantial factor in causing Stewart's harm.

**2522A. Hostile Work Environment Harassment—Conduct Directed at Plaintiff—Essential Factual Elements—Individual Defendant (Gov. Code, § 12940(j))**

| Request by Stewart | X | Request by Defendant | | Requested by | |
|---|---|---|---|---|---|
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | | | |
| | | | | Judge | |

Instruction No. **125**

Stewart claims that AAPS subjected her to harassment based on her gender, causing a hostile or abusive work environment. To establish this claim, Stewart must prove all of the following:

1. That Stewart was a trainee in an AAPS affiliated training program;
2. That Stewart was subjected to unwanted harassing conduct because she was *a woman*;
3. That the harassing conduct was severe or pervasive;
4. That a reasonable woman in Stewart's circumstances would have considered the work environment to be hostile or abusive;
5. That Stewart considered the work environment to be hostile or abusive;
6. That AAPS encouraged the harassing conduct;
7. That Stewart was harmed; and
8. That the conduct was a substantial factor in causing Stewart's harm.

## 2523. "Harassing Conduct" Explained

| Request by Stewart | X | Request by Defendant | | Requested by | |
|---|---|---|---|---|---|
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | | | |
| | | | | Judge | |

Instruction No. **126**

**Harassing conduct may include [any of the following:]**

**[a. Verbal harassment, such as obscene language, demeaning comments, slurs, [or] threats;]**

**[or]**

**[b. Physical harassment, such as unwanted touching, assault, or physical interference with normal work or movement;]**

**[or]**

**[c. Visual harassment, such as offensive posters, objects, cartoons, or drawings;]**

**[or]**

**[d. Unwanted sexual advances;]**

**[or]**

**[e. [*Describe other form of harassment if appropriate*].]**

CACI Pg.

1403

**PLAINTIFF'S PROPOSED JURY INSTRUCTIONS  20**

**2527. Failure to Prevent Harassment, Discrimination, or Retaliation—Essential Factual Elements—Employer or Entity Defendant (Gov. Code, § 12940(k))**

| Request by Stewart | X | Request by Defendant | | Requested by | |
|---|---|---|---|---|---|
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | | Judge | |

Instruction No. **127**

Stewart claims that AAPS (Carbone) failed to take all reasonable steps to prevent harassment based on gender. To establish this claim, Stewart must prove all of the following:

1. That Stewart was an employed trainee in an AAPS affiliated training program;

2. That Stewart was subjected to [harassment/discrimination/retaliation] in the course of employment;

3. That AAPS (Carbone) failed to take all reasonable steps to prevent the harassment;

4. That Stewart was harmed; and

5. That AAPS's (Carbone's) failure to take reasonable steps to prevent harassment was a substantial factor in causing Stewart's harm.

**2527. Failure to Prevent Harassment, Discrimination, or Retaliation—Essential Factual Elements—Employer or Entity Defendant (Gov. Code, § 12940(k))**

| Request by Stewart | X | Request by Defendant | | Requested by | |
|---|---|---|---|---|---|
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | | | |

_____
                                                                    Judge

Instruction No. **12B**

Stewart claims that AAPS (Carbone) failed to take all reasonable steps to prevent discrimination based on gender. To establish this claim, Stewart must prove all of the following:

1. That Stewart was an employed trainee in an AAPS affiliated training program;

2. That Stewart was subjected to discrimination in the course of employment;

3. That AAPS (Carbone) failed to take all reasonable steps to prevent the discrimination;

4. That Stewart was harmed; and

5. That AAPS's (Carbone's) failure to take reasonable steps to prevent discrimination was a substantial factor in causing Stewart's harm.

**2527. Failure to Prevent Harassment, Discrimination, or Retaliation—Essential Factual Elements—Employer or Entity Defendant (Gov. Code, § 12940(k))**

| Request by Stewart | X | Request by Defendant | | Requested by | |
|---|---|---|---|---|---|
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | | Judge | |

Instruction No. **129**

Stewart claims that AAPS (Carbone) failed to take all reasonable steps to prevent retaliation based on gender. To establish this claim, Stewart must prove all of the following:

1. That Stewart was an employed trainee in an AAPS affiliated training program;

2. That Stewart was subjected to retaliation in the course of employment;

3. That AAPS (Carbone) failed to take all reasonable steps to prevent the retaliation;

4. That Stewart was harmed; and

5. That AAPS's (Carbone's) failure to take reasonable steps to prevent [harassment/discrimination/retaliation] was a substantial factor in causing Stewart's harm.

**PLAINTIFF'S PROPOSED JURY INSTRUCTIONS  23**

## 2509. "Adverse Employment Action" Explained

| Request by Stewart | X | Request by Defendant | | Requested by | |
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | | Judge | |

Instruction No. **130**

**Stewart must prove that she was subjected to an adverse employment action. Adverse employment actions are not limited to ultimate actions such as termination or demotion. There is an adverse employment action if AAPS has taken an action or engaged in a course or pattern of conduct that, taken as a whole, materially and adversely affected the terms, conditions, or privileges of Stewart's employment. An adverse employment action includes conduct that is reasonably likely to impair a reasonable employee's job performance or prospects for advancement or promotion. However, minor or trivial actions or conduct that is not reasonably likely to do more than anger or upset an employee cannot constitute an adverse employment action.**

CACI Pg. 1359

## 2510. "Constructive Discharge" Explained

| Request by Stewart | X | Request by Defendant | | Requested by | |
|---|---|---|---|---|---|
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | | | |
| | | | | Judge | |

Instruction No. **13 )**

**Stewart must prove that she was constructively discharged. To establish constructive discharge, Stewart must prove the following:**

**1. That AAPS through AAPS's officers, directors, managing agents, or supervisory employees] intentionally created or knowingly permitted working conditions to exist that were so intolerable that a reasonable person in Stewart's position would have had no reasonable alternative except to resign; and**

**2. That Stewart resigned because of these working conditions.**

CACI Pg. 1362

**2520. Quid pro quo Sexual Harassment—Essential Factual Elements**

| Request by Stewart | X | Request by Defendant | | Requested by | |
|---|---|---|---|---|---|
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | | Judge | |

Instruction No.   **132**

Stewart claims that AAPS subjected her to sexual harassment. To establish this claim, Stewart must prove all of the following:

1. That Stewart was a an employed trainee in an AAPS affiliated training program;
2. That her AAPS affiliated trainer made unwanted sexual advances to Stewart or engaged in other unwanted verbal or physical conduct of a sexual nature;
3. That her ability to become a Dermatologist was conditioned, by words or conduct, on Stewart's acceptance of her AAPS affiliated trainer's sexual advances or conduct;
4. That at the time of her conduct, her AAPS affiliated trainer was an agent for AAPS;
5. That Stewart was harmed; and
6. That her AAPS affiliated trainer's conduct was a substantial factor in causing Stewart's harm.

**2521A. Hostile Work Environment Harassment—Conduct Directed at Plaintiff—Essential
Factual Elements—Employer or Entity Defendant (Gov. Code, § 12940(j))**

| Request by Stewart | X | Request by Defendant | | Requested by | |
|---|---|---|---|---|---|
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | | | |
| | | | | Judge | |

Instruction No.   **133**

Stewart claims that she was subjected to harassment based on her gender by her trainer
at her AAPS affiliated training program, causing a hostile or abusive work environment.
To establish this claim, Stewart must prove all of the following:

1. That Stewart was a trainee in an AAPS affiliated training program;
2. That Stewart was subjected to unwanted harassing conduct because she was a woman;
3. That the harassing conduct was severe or pervasive;
4. That a reasonable woman in Stewart's circumstances would have considered the work
environment to be hostile or abusive;
5. That Stewart considered the work environment to be hostile or abusive;
6. Carbone, AAPS' agent knew or should have known of the conduct and failed to take
immediate and appropriate corrective action;
7. That Stewart was harmed; and
8. That the conduct was a substantial factor in causing Stewart's harm.

**2522A. Hostile Work Environment Harassment—Conduct Directed at Plaintiff—Essential Factual Elements—Individual Defendant (Gov. Code, § 12940(j))**

| Request by Stewart | X | Request by Defendant | | Requested by | |
|---|---|---|---|---|---|
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | | | |
| | | | | Judge | |

Instruction No.  **134**

Stewart claims that her AAPS affiliated trainer subjected her to harassment based on her gender, causing a hostile or abusive work environment. To establish this claim, Stewart must prove all of the following:

1. That Stewart was a trainee in an AAPS affiliated training program;
2. That Stewart was subjected to unwanted harassing conduct because she was a woman;
3. That the harassing conduct was severe or pervasive;
4. That a reasonable woman in Stewart's circumstances would have considered the work environment to be hostile or abusive;
5. That Stewart considered the work environment to be hostile or abusive;
6. That Carbone encouraged] the harassing conduct;
7. That Stewart was harmed; and
8. That the conduct was a substantial factor in causing Stewart's harm.

## 2523. "Harassing Conduct" Explained

| Request by Stewart | X | Request by Defendant | | Requested by | |
|---|---|---|---|---|---|
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | | Judge | |

Instruction No.   **135**

**Harassing conduct may include [any of the following:]**
**[a. Verbal harassment, such as obscene language, demeaning comments, slurs, [or] threats [or]** [*describe other form of verbal harassment*]**;]**

**[or]**

**[b. Physical harassment, such as unwanted touching, assault, or physical interference with normal work or movement;]**

**[or]**

**[c. Visual harassment, such as offensive posters, objects, cartoons, or drawings;]**

**[or]**

**[d. Unwanted sexual advances;]**

**[or]**

**[e.** [*Describe other form of harassment if appropriate*]**].]**

**PLAINTIFF'S PROPOSED JURY INSTRUCTIONS  29**

**2527. Failure to Prevent Harassment, Discrimination, or Retaliation—Essential Factual Elements—Employer or Entity Defendant (Gov. Code, § 12940(k))**

| Request by Stewart | X | Request by Defendant | | Requested by | |
|---|---|---|---|---|---|
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | | Judge | |

Instruction No. **136**

Stewart claims that AAPS (Carbone) failed to take all reasonable steps to prevent [harassment/discrimination/retaliation]based on gender. To establish this claim, Stewart must prove all of the following:

1. That Stewart [was an employee of [*name of defendant*]/ applied to [*name of defendant*] for a job/was a person providing services under a contract with [*name of defendant*]];
2. That Stewart was subjected to [harassment/discrimination/retaliation] in the course of employment;

3. That [*name of defendant*] failed to take all reasonable steps to prevent the [harassment/discrimination/retaliation];
4. That Stewart was harmed; and
5. That [*name of defendant*]'s failure to take reasonable steps to prevent [harassment/discrimination/retaliation] was a substantial factor in causing Stewart's harm.

_____CACI Pg.
2527

**137**

## 10.1A CIVIL RIGHTS—TITLE VII—DISPARATE TREATMENT—WHERE EVIDENCE SUPPORTS "SOLE REASON" OR "MOTIVATING FACTOR"

### Model Jury Instruction Language

The plaintiff has brought a claim of employment discrimination against the defendant. The plaintiff claims that her sex was either the sole reason or a motivating factor for the defendant's decision to discharge not promote, demote and other adverse actions to plaintiff.

The defendant denies that the plaintiff's sex was either the sole reason or a motivating factor for the defendant's decision to discharge, not hire, demote and other adverse actions to plaintiff and further claims the decision to discharge, demote and other adverse actions to the plaintiff was based upon lawful reasons.

### Our Jury Drafted Instruction

Plaintiff's sex was either the sole reason or a motivating factor for Defendant's AAPS' decision to *[Numbered Adverse Action, as stated below.]*

1) Support agent and trainer's attempts to force Plaintiff to have sex with him.
2) Misrepresent that AAPS was an ethical organization in order to induce Plaintiff to leave her ACGME Accredited Residency program and train in an AAPS affiliated program so that so they could sexually exploit her once got control of her career options.
3) Support her trainer's decision to refuse to train Plaintiff after she refused his unwanted and uninvited sexual demands.
4) Support her trainer's decision to create a hostile work environment after she refused his unwanted and uninvited sexual demands.
5) Refuse to acknowledge her documentation of training as meeting the requirements to take the board certification examination.
6) Not provide her with the questions and answers for the exams before the tests like they did the men (males) in the program who were similarly situated.
7) Initiate disciplinary proceedings against her in 2003 after she questioned the disparate treatment afforded to an Asian female taking the certification exam.
8) Support Carbone's misrepresentations made to her in October of 2010 that she could safely participate in leadership without fear of further retaliation.
9) Give Dr. Rice her information so he could contact her and draw her into a known controversy, when the real intent was to create a pretext to terminate her and to destroy her professional career.
10) Supporting Mr. Russo in his defaming Plaintiff by claiming that Plaintiff was "Psycho" and needed a shrink

11) Invalidate her nomination for office in AAPS after she was nominated at the Dermatology Academy meeting on January 10, 2012.

12) Cancel the meeting and her nomination as an officer in the Board of Directors and House of Delegates. AAPS cancelled the entire meeting under a false pretext to stop the Plaintiff's nomination to run for those offices.

13) Support and induce their agents' false claims that Plaintiff had called for the firing of Mr. Carbone at the January 10, 2012 Dermatology Academy meeting.

14) Falsely state, through their agents that she had opposed the bylaws and the authority of the Board of Directors.

15) Not provide sufficient postage on a letter requiring Plaintiff to sign and return the confidentiality agreement required for her to be able to remain in her elected office in AAPS by February 10th 2012.

16) Not provide her with a fair disciplinary procedure during the disciplinary process they put her through in June of 2012.

17) Refuse to provide the plaintiff her rights under the Bylaws (Section 3.05) of AAPS during the disciplinary process.

18) Bar her from entering and being present at the Board of Directors meeting in Marina Del Rey, where the members were lead to believe she was being disciplined by the Board of Directors and that she was being provided the right to present evidence in her defense if such evidence existed.

19) Plaintiffs sex was a motivating factor in not allowing Plaintiff to have an appeal as promised and as provided for under the AAPS bylaws.

The defendant denies that the plaintiffs sex was either the sole reason or a motivating factor to commit any of the above adverse employment actions against the plaintiff and further claims that the decision to commit each and every one of the adverse actions stated above was based upon a lawful reason.

138

**10.1B CIVIL RIGHTS—TITLE VII—DISPARATE TREATMENT—"SOLE REASON"—ELEMENTS AND BURDEN OF PROOF**

As to the plaintiff's claim that her sex was the sole reason for the defendant's decision to commit the numbered adverse action against her, the plaintiff has the burden of proving both of the following elements by a preponderance of the evidence:

1. The plaintiff was subjected to adverse action numbers 1 to 19 as listed above by the defendant; and

2. Adverse action numbers 1 to 19 stated above were committed solely because of the plaintiff's sex.

If you find that the plaintiff has proved both of these elements, your verdict should be for the plaintiff. If, on the other hand, the plaintiff has failed to prove either of these elements, your verdict should be for the defendant.

139

**10.1C CIVIL RIGHTS—TITLE VII—DISPARATE TREATMENT—"MOTIVATING
FACTOR"—ELEMENTS AND BURDEN OF PROOF**

As to the plaintiff's claim that her sex was a motivating factor for the defendant's decision to demote, or *other adverse action.* The plaintiff has the burden of proving both of the following elements by a preponderance of the evidence:

1. Plaintiff was subjected to the numbered adverse actions 1-19, stated above by the defendant; and

2. Plaintiff's sex was a motivating factor in the defendant's decision commit the numbered adverse actions 1-19 stated above upon the plaintiff.

If you find that the plaintiff has proved both of these elements, your verdict should be for the plaintiff. If, on the other hand, the plaintiff has failed to prove either of these elements, your verdict should be for the defendant.

/

**PLAINTIFF'S PROPOSED JURY INSTRUCTIONS  34**

**140**

### 10.3 CIVIL RIGHTS—TITLE VII—RETALIATION—
### ELEMENTS AND BURDEN OF PROOF

The plaintiff seeks damages against the defendant for retaliation. The plaintiff has the burden of proving each of the following elements by a preponderance of the evidence:

1. Plaintiff engaged in or was engaging in an activity protected under federal law, that is, she complained about sexual harassment by her trainer to the CEO of AAPS and she withdrew from the hostile workplace environment by requesting permission to transfer to another training program.

2. The employer subjected the plaintiff Stewart to an adverse employment action, that is not limited to, threatening that if she left his program, he would use his influence to make certain that she would never be able to become a Dermatologist. This actually occurred when, after she completed her training she was not permitted to take the board certification examination.

3. The plaintiff was not permitted to take the board certification examination in Dermatology because she had complained about sexual harassment by her trainer to the CEO of AAPS, and she had withdrawn from the hostile workplace environment after requesting permission to transfer to another training program.
.

A plaintiff is "subjected to an adverse employment action" because of her *participation in a protected activity* if the adverse employment action would not have occurred but for that participation.

If you find that the plaintiff has proved all three of these elements, your verdict should be for the plaintiff. If, on the other hand, the plaintiff has failed to prove any of these elements, your verdict should be for the defendant.

Subsequently, in 2012, the Plaintiff was subjected to yet another retaliation action.

In June of 2011, the Plaintiff had passed out a few copies of a Preliminary Legal Opinion that contained evidence that sexual harassment was still occurring within AAPS headquarters.

In retaliation for her opposition to workplace discrimination and sexual degradation of women, AAPS initiated and carried out the humiliation of Patricia Stewart and the unfair and unreasonable termination of the Stewart's membership in AAPS, and the revocation of her board certification because she had opposed the continuation of sexual harassment of subordinates by supervisors working for AAPS. The effect of this revocation of her board certification was to fulfill the vow that her original training supervisor had threatened in retaliation for her original opposition to his sexual harassment at the workplace.

Stewart was subjected this adverse retaliatory employment action solely because she had refused to have sex with her trainer, and because she had reported his inappropriate actions to her supervisor, Mr. Carbone. She also was retaliated against because she had engaged in the

protected activity of seeking to escape her sexual oppressor, rather than submitting to his unwanted advances and unrelenting demands and harassment.

**141**

## 10.4A.1 CIVIL RIGHTS—TITLE VII—"ADVERSE EMPLOYMENT ACTION" IN RETALIATION CASES

An action is an adverse employment action if a reasonable employee would have found the action materially adverse, which means it might have dissuaded a reasonable worker from making or supporting a charge of discrimination.

142

## 10.4B CIVIL RIGHTS—TITLE VII—
## "TANGIBLE EMPLOYMENT ACTION" DEFINED

Tangible employment actions are the means by which a supervisor brings the official power of the enterprise to bear on subordinates. A tangible employment action requires an official act of the enterprise, a company act. A tangible employment action consists of a significant change in employment status such as firing, reassignment, undesirable reassignment or a significant change in benefits. A tangible employment action occurs when a superior obtains sexual favors from an employee by conditioning continued employment on participation in unwelcome acts.

## 1900. Intentional Misrepresentation

Instruction
No **143**

| Request by Plaintiff | | Request by Defendant | | Requested by | |
|---|---|---|---|---|---|
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | | Judge | |

Instruction
No **143**

**Stewart claims that AAPS made a false representation that AAPS is an ethical organization that holds its staff and members to abide by its espoused code of ethics which harmed her. To establish this claim, Stewart must prove all of the following:**

15. **That AAPS represented to Stewart that a fact was true;**

16. **That AAPS's representation was false;**

17. **That AAPS knew that the representation was false when it made it, or that it made the representation recklessly and without regard for its truth;**

18. **That AAPS intended that Stewart rely on the representation;**

19. **That Stewart reasonably relied on AAPS's representation;**

20. **That Stewart was harmed; and**

21. **That Stewart's reliance on AAPS's representation was a substantial factor in causing her harm.**

---

*New September 2003; Revised December 2012, December 2013*

## 1907. Reliance

| Request by Plaintiff | X | Request by Defendant | | Requested by | |
|---|---|---|---|---|---|
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | | | |

_____
Judge

Instruction No. **144**

**Stewart relied on AAPS' misrepresentation that AAPS is an ethical organization that holds its staff and members to abide by its espoused Code of Ethics if:**

1.    **The misrepresentation substantially influenced her decision to give up her position in an ACGME accredited residency program and her various other options to be trained in AOA and ACGME approved residency programs, and;**

2.    **She probably would not have given up her position in an ACGME accredited residency program and her various other options to be trained in AOA and ACGME approved residency programs without the misrepresentation.,**

**It is not necessary for a misrepresentation to be the only reason for Stewart's conduct.**

CACI Pg. 1029

## 1908.  Reasonable Reliance

Instruction No _**145**_

| Request by Stewart | | Request by Defendant | | Requested by | |
|---|---|---|---|---|---|
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | | | |
| | | | | Judge | |

Instruction No _**145**_

In determining whether Stewart's reliance on the misrepresentation that AAPS is an ethical organization that holds its staff and members to abide by its espoused code of ethics was reasonable, she must first prove that the matter was material. A matter is material if a reasonable person would find it important in determining his or her choice of action.

If you decide that the matter is material, you must then decide whether it was reasonable for Stewart to rely on the misrepresentation that AAPS is an ethical organization that holds its staff and members to abide by its espoused code of ethics. In making this decision, take into consideration Stewart's intelligence, knowledge, education, and experience.

However, it is not reasonable for anyone to rely on a misrepresentation/concealment/false promise that is preposterous. It also is not reasonable for anyone to rely on a misrepresentation/concealment if facts that are within her observation show that it is obviously false.

*New September 2003; Revised October 2004, December 2013*

**PLAINTIFF'S PROPOSED JURY INSTRUCTIONS  40**

## 1900. Intentional Misrepresentation

Instruction No _**146**_

| Request by Plaintiff | | Request by Defendant | | Requested by | |
|---|---|---|---|---|---|
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | | | |

Judge

Instruction No _**146**_

**Stewart claims that Carbone made a false representation that if Stewart diligently carried out her duties as an officer of the Academy of Dermatology, that she would not be exposing herself to retaliation or abuse by the leadership of AAPS which harmed her. To establish this claim, Stewart must prove all of the following:**

22. **That Carbone represented to Stewart that a fact was true;**

23. **That Carbone's representation was false;**

24. **That Carbone knew that the representation was false when he made it, or that he made the representation recklessly and without regard for its truth;**

25. **That Carbone intended that Stewart rely on the representation;**

26. **That Stewart reasonably relied on Carbone's representation;**

27. **That Stewart was harmed; and**

28. **That Stewart's reliance on Carbone's representation was a substantial factor in causing her harm.**

*New September 2003; Revised December 2012, December 2013*

## 1907. Reliance

| Request by Plaintiff | X | Request by Defendant | | Requested by | |
|---|---|---|---|---|---|
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | _____ Judge | | |

Instruction No. **147**

**Stewart relied on Carbone's misrepresentation that if she diligently carried out her duties as an officer to the Academy of Dermatology she would not be exposing herself to retaliation or abuse by the leadership of AAPS if:**

1. **The misrepresentation, influenced her to: serve as a governor of the Academy of Dermatology, and;**

**and**

2. **She probably would not have decided to continue to serve as governor without the misrepresentation.**

**It is not necessary for a misrepresentation to be the only reason for Stewart's conduct.**

CACI Pg. 1029

## 1908.  Reasonable Reliance

Instruction
No

| Request by Stewart | | Request by Defendant | | Requested by | |
|---|---|---|---|---|---|
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | | Judge | |

Instruction
No

In determining whether Stewarts's reliance on the misrepresentation that if
Stewart diligently carried out her duties as an officer of the Academy of
Dermatology she would not be exposing herself to retaliation or abuse by the
leadership of AAPS was reasonable, she must first prove that the matter was
material.  A matter is material if a reasonable person would find it important in
determining his or her choice of action.

If you decide that the matter is material, you must then decide whether it was
reasonable for Stewart to rely on the misrepresentation that if Stewart diligently
carried out her duties as an officer of the Academy of Dermatology she would not
be exposing herself to retaliation or abuse by the leadership of AAPS. In making
this decision, take into consideration Stewart's intelligence, knowledge,
education, and experience.

However, it is not reasonable for anyone to rely on a misrepresentation that is
preposterous. It also is not reasonable for anyone to rely on a misrepresentation
if facts that are within her observation show that it is obviously false.

*New September 2003; Revised October 2004, December 2013*

**PLAINTIFF'S PROPOSED JURY INSTRUCTIONS  43**

## 1900. Intentional Misrepresentation

Instruction
No **149**

| Request by Plaintiff | | Request by Defendant | | Requested by | |
|---|---|---|---|---|---|
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | | | |
| | | | | Judge | |

Instruction
No **149**

**Stewart claims that Cerrato and AAPS made a false representation that AAPS would provide Stewart an appeal hearing before a panel of past presidents which harmed her. To establish this claim, Stewart must prove all of the following:**

1. **That Cerrato and AAPS represented to Stewart that the fact was true;**

2. **That Cerrato and AAPS's representation was false;**

3. **That Cerrato and AAPS knew that the representation was false when they made it, or that they made the representation recklessly and without regard for its truth;**

4. **That Cerrato and AAPS intended that Stewart rely on the representation;**

5. **That Stewart reasonably relied on Cerrato and AAPS's representation;**

6. **That Stewart was harmed; and**

7. **That Stewart's reliance on Cerrato and AAPS's representation was a substantial factor in causing her harm.**

---

*New September 2003; Revised December 2012, December 2013*

1358698.1

## 1907. Reliance

Instruction
No   **150**

| Request by Stewart | | Request by Defendant | | Requested by | |
|---|---|---|---|---|---|
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | | | |
| | | | | Judge | |

Instruction
No   **150**

**Stewart relied on Cerrato and AAPS's misrepresentation that that AAPS would provide Stewart an appeal hearing before a panel of past presidents if:**

1. **The misrepresentation substantially influenced her not to if file an immediate lawsuit for wrongful termination; and**

2. **She would probably not have deferred filing an immediate lawsuit for wrongful termination without the misrepresentation.**

**It is not necessary for a misrepresentation to be the only reason for Stewart's conduct.**

---

*New September 2003; Revised December 2013*

**PLAINTIFF'S PROPOSED JURY INSTRUCTIONS  45**

## 1908.  Reasonable Reliance

Instruction No **151**

| Request by Stewart | | Request by Defendant | | Requested by | |
|---|---|---|---|---|---|
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | | Judge | |

Instruction No **151**

In determining whether Stewart's reliance on the misrepresentation that AAPS would provide Stewart an appeal hearing before a panel of past presidents was reasonable, she must first prove that the matter was material.  A matter is material if a reasonable person would find it important in determining his or her choice of action.

If you decide that the matter is material, you must then decide whether it was reasonable for Stewart to rely on the misrepresentation that AAPS would provide Stewart an appeal hearing before a panel of past presidents. In making this decision, take into consideration Stewart's intelligence, knowledge, education, and experience.

However, it is not reasonable for anyone to rely on a misrepresentation that is preposterous. It also is not reasonable for anyone to rely on a misrepresentation if facts that are within her observation show that it is obviously false.

---

*New September 2003; Revised October 2004, December 2013*

**PLAINTIFF'S PROPOSED JURY INSTRUCTIONS  46**

1358698.1

## 1900. Intentional Misrepresentation

Instruction
No    152

| Request by Plaintiff | | Request by Defendant | | Requested by | |
|---|---|---|---|---|---|
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | | Judge | |

Instruction
No    152

**Stewart claims that AAPS made a false representation that her board certification was not affected by the termination of her membership which harmed her. To establish this claim, Stewart must prove all of the following:**

8.  **That AAPS represented to Stewart that a fact was true;**

9.  **That AAPS's representation was false;**

10. **That AAPS knew that the representation was false when it made it, or that it made the representation recklessly and without regard for its truth;**

11. **That AAPS intended that Stewart rely on the representation;**

12. **That Stewart reasonably relied on AAPS's representation;**

13. **That Stewart was harmed; and**

14. **That Stewart's reliance on AAPS's representation was a substantial factor in causing her harm.**

_New September 2003; Revised December 2012, December 2013_

1358698.1

## 1907. Reliance

| Request by Plaintiff | X | Request by Defendant | | Requested by | |
|---|---|---|---|---|---|
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | | | |

_____
                                                                                    Judge

Instruction No.   **153**

Stewart relied on AAPS' misrepresentation that her board certification was not affected by the termination of her membership in AAPS if:

1,      The misrepresentation substantially influenced her decision not to immediately file a lawsuit against AAPS for wrongful termination, and

2.      She probably would not have filed a lawsuit against AAPS for wrongful termination immediately without the misrepresentation.

It is not necessary for a misrepresentation to be the only reason for Stewart's conduct.

CACI Pg. 1029

## 1908. Reasonable Reliance

**PLAINTIFF'S PROPOSED JURY INSTRUCTIONS  48**

## 1908.  Reasonable Reliance

Instruction
No    **154**

| Request by Stewart | | Request by Defendant | | Requested by | |
|---|---|---|---|---|---|
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | | | |
| | | | | Judge | |

Instruction
No    **154**

In determining whether Stewart's reliance on the misrepresentation that Stewart's board certification was not affected by the termination of her membership was reasonable, she must first prove that the matter was material.  A matter is material if a reasonable person would find it important in determining his or her choice of action.

If you decide that the matter is material, you must then decide whether it was reasonable for Stewart to rely on the misrepresentation that Stewart's board certification was not affected by the termination of her membership. In making this decision, take into consideration Stewart's intelligence, knowledge, education, and experience.

However, it is not reasonable for anyone to rely on a misrepresentation/concealment/false promise that is preposterous. It also is not reasonable for anyone to rely on a misrepresentation if facts that are within her observation show that it is obviously false.

---

*Vew September 2003; Revised October 2004, December 2013*

**PLAINTIFF'S PROPOSED JURY INSTRUCTIONS  49**

## 1901. Concealment

| Request by Plaintiff | X | Request by Defendant | | Requested by | |
|---|---|---|---|---|---|
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | _____ Judge | | | |

Instruction No. **156**

**Stewart claims that she was harmed because AAPS and/or Carbone concealed certain information. To establish this claim, Stewart must prove all of the following:**

**[1. (a) That AAPS and/or Carbone and Stewart were** [*insert type of fiduciary relationship, e.g., "business partners"*]**; and**

**(b) That AAPS and/or Carbone intentionally failed to disclose certain facts to Stewart;**

**[1. That AAPS and/or Carbone intentionally failed to disclose certain facts that were known only to [him/her/it] and that Stewart could not have discovered;]**

**2. That Stewart did not know of the concealed fact[s];**

**3. That AAPS/and /or Carbone intended to deceive Stewart by concealing the fact[s];**

**4. That had the omitted information been disclosed, Stewart reasonably would have behaved differently;**

**5. That Stewart was harmed; and**

**6. That AAPS' and Carbone's concealment was a substantial factor in causing Stewarts's harm.**

_____

CACI Pg. 1301

**PLAINTIFF'S PROPOSED JURY INSTRUCTIONS  50**

### 1902. False Promise

| Request by Plaintiff | X | Request by Defendant | | Requested by | |
| --- | --- | --- | --- | --- | --- |
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | _____ | |
| | | | Judge | |

Instruction No. **156**

**Stewart claims she was harmed because AAPS and/or William Carbone and/or Robert Cerrato made false promises. To establish this claim, Stewart must prove all of the following:**

**1. That AAPS and/or William Carbone and/or Robert Cerrato made promises to Stewart;**

**2. That AAPS and/or William Carbone and/or Robert Cerrato did not intend to perform their promises when they made them;**

**3. That AAPS and/or William Carbone and/or Robert Cerrato intended that Stewart rely on their promises;**

**4. That Stewart reasonably relied on the promises of AAPS and/or William Carbone and/or Robert Cerrato;**

**5. That AAPS and/or, William Carbone and/or Robert Cerrato did not perform the promised acts;**

**6. That Stewart was harmed; and**

**7. That Stewart's reliance on AAPS' and/or William Carbone's and Robert Cerrato's promise was a substantial factor in causing her harm.**

_____

CACI Pg. 1017

## 1925. Affirmative Defense—Statute of Limitations—Fraud or Mistake

Instruction
No   **157**

| Request by Stewart | | Request by Defendant | | Requested by | |
|---|---|---|---|---|---|
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | | | |
| | | | | Judge | |

Instruction
No   **157**

**AAPS contends that Stewart's lawsuit was not filed within the time set by law. To succeed on this defense, AAPS must prove that its alleged misrepresentation that AAPS board certification is comparable to ABMS or AOA board certification occurred before September 16, 2010.**

**If AAPS proves that Stewart's claimed harm occurred before September 16, 2010, Stewart's lawsuit was still filed on time if Stewart proves that before that date, she did not discover facts constituting the fraud or mistake, and with reasonable diligence could not have discovered those facts.**

---

*New April 2008*

1358698.1

Florida Jury Instructions on Defamation

**158**

## Florida 405.1  INTRODUCTION

| Request by Stewart | X | Request by Defendant | | Requested by | |
|---|---|---|---|---|---|
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | Judge | | |

Instruction No. **158**

**Members of the jury, you have now heard and received all of the evidence in this case. I am now going to tell you about the rules of law that you must use in reaching your verdict. [You will recall at the beginning of the case I told you that if, at the end of the case I decided that different law applies, I would tell you so. These instructions are (slightly) different from what I gave you at the beginning and it is these rules of law that you must now follow.]  When I finish telling you about the rules of law, the attorneys will present their final arguments and you will then retire to decide your verdict.**

NOTES ON USE FOR 405.1

1.     When instructing the jury before taking evidence, use instruction 202.1 in lieu of instruction 405.1. See Model Instruction No. 1. Instruction 405.1 is for instructing the jury after the evidence has been concluded. Use the bracketed language in instruction 405.1 when the final instructions are different from the instructions given at the beginning of the case. If the instructions at the end of the case are different from those given at the beginning of the case, the committee recommends that the court point out the differences with appropriate language in the final instructions, including an explanation for the difference, such as where the court has directed a verdict on an issue.

2.     *Fla.R.Civ.P.* 1.470(b) authorizes instructing the jury during trial or before or after final argument. The timing of instructions is within the sound discretion of the trial judge, to be determined on a case-by-case basis, but the committee strongly recommends instructing the jury before final argument.

3.     Each juror must be provided with a full set of jury instructions for use during their deliberations. *Rule* 1.470(b). The trial judge may find it useful to provide these instructions to the jurors when the judge reads the instructions in open court so that jurors can read along with the judge, as the judge reads the instructions aloud.

## 405.2  SUMMARY OF CLAIMS AND CONTENTIONS

| Request by Stewart | X | Request by Defendant | | Requested by | |
|---|---|---|---|---|---|
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | | Judge | |

Instruction No. **159**

**The claims [and defenses] in this case are as follows.** Stewart **claims that** AAPS, CARBONE, CERRATO, RUBAKOVIC AND MONTES, individually and/or collectively, **made and published a false statements about her which caused her harm.** Stewart **claims the statements were** :

## ALLEGEDLY DEFAMATORY STATEMENT ONE

AAPS, CARBONE, CERRATO, MONTES claimed, in an email sent to all members of AAPS on March 28, 2012, that Stewart was "playing an active role in a campaign to destroy AAPS."

AAPS, CARBONE, CERRATO, AND MONTES each **deny those claims.**

## ALLEGEDLY DEFAMATORY STATEMENT TWO

RUBAKOVIC claimed in an email sent to all of the members of the Dermatology Academy on May 30, 2012 that Stewart had "challenged the Bylaws of AAPS and had challenged the actions of the Board of Directors",

Although the apparent target of her communication was the members of the Dermatology academy, the true target was the Board of Directors who were to vote that evening to terminate the membership in AAPS of Stewart, and who were allegedly told that even Stewart's Academy were against her and that the entire leadership of her Academy had written to state that she was challenging the Board of Directors and the Bylaws and disrupting the operation of the Academy so much so that entire meetings had to be done over.

These false statements, which were made by RUBAKOVIC were communicated by Cerrato, Carbone, and Montes to the members of the Board of directors on May 30, 2012 and motivated the Board of Directors to vote to terminate her membership in AAPS on that day.

**ALLEGEDLY DEFAMATORY STATEMENT THREE**

CERRATO CARBONE, MONTES and AAPS claimed in a power point presentation made to the members of AAPS who were present at the Board of Directors Meeting in Marina Del Rey, California on June 25, 2012 that Stewart had a blog site available to the public on which she was attacking the leadership of AAPS, and that she would not respond to reasonable requests and warnings to please stop publically attacking the organization. That she was so persistent in her attacks that the leadership was forced to terminate her membership in AAPS in order to stop her from further harming the organization. Stewart does not have a blog site and never wrote any of the documents shown to the members and attributed to her. She had never made any public statements critical of the leadership in public settings except for circulating a few copies of the Preliminary Legal Opinion just prior to the vote on the amendment that the Opinion was written to address at the annual meeting in Tyson's corner, VA in June of 2011.

Because the leaders had received emails from Dr. Stewart, in which she had claimed that she had no blog site and had not said anything against the leadership, these alleged proofs presented to the entire body of leaders of AAPS, which she did not rebut when apparently offered to do so, created the impression that she was a liar and that she had been publically exposed for her attempts to deceive the members of her allegedly devious ways. This caused the leaders of AAPS to treat her with contempt and disdain.

 

**Stewart must prove her claim by the greater weight of the evidence. I will now define some of the terms you will use in deciding this case.**

**405.9  ISSUES ON PLAINTIFF'S CLAIM — PRIVATE CLAIMANT,**

**NON-MEDIA DEFENDANT**

| Request by Stewart | X | Request by Defendant | | Requested by | |
|---|---|---|---|---|---|
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | | Judge | |

Instruction No. **160**

The issues for you to decide on the claim of Stewart against AAPS, CARBONE, CERRATO, RUBAKOVIC AND MONTES individually and/or collectively are:

*a.    Issue whether a defamatory publication concerning claimant was made as claimed:*

**ALLEGEDLY DEFAMATORY STATEMENT ONE**

Whether AAPS, CARBONE, CERRATO, and MONTES individually and/or collectively made the statements concerning Stewart as Stewart claims; and, if so, whether the statement tended to expose Stewart to hatred, ridicule, or contempt and/or tended to injure Stewart in her business, reputation, or occupation.

If the greater weight of the evidence does not support Stewart's claim on these issues, then your verdict should be for AAPS, CARBONE, CERRATO, AND MONTES. However, if the greater weight of the evidence supports Stewart claim on these issues, then your verdict should be for Stewart in the total amount of her damages. You shall consider the defense of truth and good motives and the defense of privilege raised by AAPS CARBONE, CERRATO, AND MONTES.

**ALLEGEDLY DEFAMATORY STATEMENT TWO**

Whether either RUBAKOVIC made the statements concerning Stewart as Stewart claims; and, if so, whether the statement tended to expose Stewart to hatred, ridicule, or contempt and/or tended to injure Stewart in her business, reputation, or occupation.

If the greater weight of the evidence does not support Stewart's claim on these issues, then your verdict should be for RUBAKOVIC. However, if the greater weight of the evidence supports Stewart claim on these issues, then your verdict should be for Stewart in the total

amount of her damages. You shall consider the defense of truth and good motives and the defense of privilege raised by RUBAKOVIC.

## ALLEGEDLY DEFAMATORY STATEMENT THREE

Whether AAPS, CARBONE, CERRATO, and MONTES individually and/or collectively made the statements concerning Stewart as Stewart claims; and, if so, whether the statement tended to expose Stewart to hatred, ridicule, or contempt and/or tended to injure Stewart in her business, reputation, or occupation.

If the greater weight of the evidence does not support Stewart's claim on these issues, then your verdict should be for AAPS, CARBONE, CERRATO, AND MONTES. However, if the greater weight of the evidence supports Stewart claim on these issues, then your verdict should be for Stewart in the total amount of her damages. You shall consider the defense of truth and good motives and the defense of privilege raised by AAPS CARBONE, CERRATO, AND MONTES.

*b.     Defense issues of truth and good motives:*

## ALLEGEDLY DEFAMATORY STATEMENT ONE

On the first defense, the issue for your determination is whether the statement made by AAPS, CARBONE, CERRATO, AND MONTES individually and/or collectively was substantially true and was made by them with good motives.

A statement is substantially true if its substance or gist conveys essentially the same meaning that the truth would have conveyed. In making this determination, you should consider the context in which the statement is made and disregard any minor inaccuracies that do not affect the substance of the statement.

If the greater weight of the evidence supports this defense, your verdict should be for AAPS, Carbone, Cerrato, and/or Montes.

If the greater weight of the evidence does not support this defense, and the greater weight of the evidence supports Stewart's claim on these issues, then you shall consider the defense of privilege raised by AAPS, CARBONE, CERRATO, and MONTES.

**ALLEGEDLY DEFAMATORY STATEMENT TWO**

On the first defense, the issue for your determination is whether the statement made by RUBAKOVIC was substantially true and was made by her with good motives.

A statement is substantially true if its substance or gist conveys essentially the same meaning that the truth would have conveyed. In making this determination, you should consider the context in which the statement is made and disregard any minor inaccuracies that do not affect the substance of the statement.

If the greater weight of the evidence supports this defense, your verdict should be for RUBAKOVIC.

If the greater weight of the evidence does not support this defense, and the greater weight of the evidence supports Stewart's claim on these issues, then you shall consider the defense of privilege raised by RUBAKOVIC.

**ALLEGEDLY DEFAMATORY STATEMENT THREE**

On the first defense, the issue for your determination is whether the statement made by AAPS, CARBONE, CERRATO, AND MONTES individually and/or collectively was substantially true and was made by them with good motives.

A statement is substantially true if its substance or gist conveys essentially the same meaning that the truth would have conveyed. In making this determination, you should consider the context in which the statement is made and disregard any minor inaccuracies that do not affect the substance of the statement.

If the greater weight of the evidence supports this defense, your verdict should be for AAPS, Carbone, Cerrato, and/or Montes.

If the greater weight of the evidence does not support this defense, and the greater weight of the evidence supports Stewart's claim on these issues, then you shall consider the defense of privilege raised by AAPS CARBONE, CERRATO, AND MONTES .

*c.*     *Defense issue whether defendant had qualified privilege:*

## ALLEGEDLY DEFAMATORY STATEMENT ONE

On the defense of privilege, I instruct you that provided one does not speak with improper motives, which I shall explain in a moment, a person such as AAPS, CARBONE, CERRATO, and MONTES is privileged to make a statement to leaders of AAPS who are directly involved in the litigation, such as the members of the Board of Directors and the executive administrative staff, about another such as Stewart, even if the statement is untrue, under the following circumstances:

AAPS, CARBONE, CERRATO, and MONTES were making the allegedly defamatory statements to leaders of AAPS, such as the members of the Board of Directors of AAPS and the Presidents of the various Academies, and the Past Presidents who were directly involved with the governance of AAPS had to make decisions concerning whether to pursue or settle the litigation, and were entrusted to represent the interests of the members who were not in a position to acquire sufficient information to understand the facts surrounding the litigation. Those individuals to whom the allegedly defamatory statements were made had duties relative to the litigation.

If the greater weight of the evidence does not show that these circumstances existed, then you must find that AAPS, CARBONE, CERRATO, and MONTES had no privilege to make such a statement even with proper motives. However, if the greater weight of the evidence does show that defendants spoke under circumstances creating such a privilege, then you should decide whether, as Stewart claims, AAPS, CARBONE, CERRATO, and MONTES made the statement with improper motives abusing that privilege and whether AAPS, CARBONE, CERRATO, and MONTES  exceeded the scope of the privilege by publishing the allegedly defamatory statements to persons who were not directly involved in the litigation.

## ALLEGEDLY DEFAMATORY STATEMENT TWO

On the defense of privilege, I instruct you that,  provided one does not speak with improper motives, which I shall explain in a moment, a person such as Rubakovic is privileged to make a statement to the members of the Dermatology Academy, even if the statement is untrue, under the following circumstances:

If Stewart were running for re-election to an office in the Dermatology Academy, then the leaders of the Dermatology Academy, including Rubakovic, had a right to report their concerns about the allegedly questionable conduct of Stewart to the members of their Academy so that the members would know whether she was representing their interests so that they could know whether to re-elect her to her governor position

If the greater weight of the evidence does not show that these circumstances existed, then you must find that the RUBAKOVIC had no privilege to make such a statement even with proper motives. However, if the greater eight of the evidence does show that defendants spoke under circumstances creating such a privilege, then you should decide whether, as Stewart claims, RUBAKOVIC made the statement with improper motives abusing that privilege.

**ALLEGEDLY DEFAMATORY STATEMENT THREE**

On the defense of privilege, I instruct you that provided one does not speak with improper motives, which I shall explain in a moment, a person such as CERRATO, CARBONE and AAPS is privileged to make a statement to the members of the Board of Directors and the members of AAPS who were present at the Board Meeting where the allegedly defamatory presentation concerning Stewart was made, even if the statement is untrue, under the following circumstances:

If they were actually conducting a hearing in good faith to determine whether the physicians who have been charged with committing acts against the best interests of AAPS, or inconsistent with its purposes should be disciplined as charged.   Such hearings have been traditionally held before the membership of AAPS because those members have an interest in being able to see that the disciplinary process is conducted in a fair and reasonable manner. AAPS' has an interest in excluding members who are harming it, or who do not meet its standards.   Carbone, Cerrato, and Montes', as officers of the organization, have a duty to discipline members of AAPS who commit acts against the best interests of the organization or inconsistent with its purposes by holding hearings before the Board of Directors under Bylaws Section 3.05.

If the greater weight of the evidence does not show that these circumstances existed, then you must find that AAPS, CARBONE, CERRATO, and MONTES had no privilege to make such a statement even with proper motives. However, if the greater weight of the evidence does show that AAPS, CARBONE, CERRATO, and MONTES spoke under circumstances creating such a privilege, then you should decide whether, as Stewart claims, AAPS, CARBONE, CERRATO, and MONTES made the statement with improper motives abusing that privilege

*d.       Issue whether defendant abused qualified privilege:*

**ALLEGEDLY DEFAMATORY STATEMENT ONE**

AAPS, CARBONE, CERRATO, and MONTES had a privilege to make a statement even if untrue, provided he did so with proper motives. Such a privilege exists if

The Defendants, Carbone, Cerrato, Montes, and AAPS were making the allegedly defamatory statements to leaders of AAPS, such as the members of the Board of Directors of AAPS and the Presidents of the various Academies, and the Past Presidents who were directly involved with the governance of AAPS had to make decisions concerning whether to pursue or settle the litigation,  and were entrusted to represent the interests of the members who were not in a position to acquire sufficient information to understand the facts surrounding the litigation.

The issue for you to decide is therefore whether, as Stewart claims, AAPS made the statement with improper motives abusing that privilege. One makes a false statement about another with improper motives if one's primary motive and purpose in making the statement is to gratify one's ill will, hostility and intent to harm the other, rather than to advance or protect AAPS', CERRATO's, CARBONE's interest, right or duty to speak to the leaders involved with the litigation.

---

If the greater weight of the evidence does not support Stewart claim that AAPS, Carbone, Cerrato, Cerrato and /or Montes abused any privilege he had and the greater weight of the evidence does support the defense of privilege, then your verdict should be for AAPS, Carbone and/or Cerrato.

However, if the greater weight of the evidence supports Stewart's claim that AAPS, CARBONE, CERRATO, and/or MONTES abused any privilege he or it  had, then your verdict should be for Stewart in the total amount of her damages.


## ALLEGEDLY DEFAMATORY STATEMENT TWO

Rubakovic had a privilege to make a statement even if untrue, provided she did so with proper motives. Such a privilege exists if

Stewart were running for re-election to an office in the Dermatology Academy, then the leaders of the Dermatology Academy, including Rubakovic, had a right to report their concerns about the allegedly questionable conduct of Stewart to the members of their Academy so that the members would know whether she was representing their interests so that they could know whether to re-elect her to her governor position.

The issue for you to decide is therefore whether, as Stewart claims, Rubakovic made the statement with improper motives abusing that privilege. One makes a false statement about another with improper motives if one's primary motive and purpose in making the statement is to gratify one's ill will, hostility and intent to harm the other, rather than to advance or protect RUBAKOVIC's duty to speak to the members of Stewart's Academy.

If the greater weight of the evidence does not support Stewart's claim that Rubakovic abused any privilege she had and the greater weight of the evidence does support the defense of privilege, then your verdict should be for Rubakovic.

However, if the greater weight of the evidence supports Stewart's claim that Rubakovic, abused any privilege she had, then your verdict should be for Stewart in the total amount of her damages.


## ALLEGEDLY DEFAMATORY STATEMENT THREE

AAPS, CARBONE, CERRATO, and /or MONTES  had a privilege to make a statement even if untrue, provided he did so with proper motives. Such a privilege exists if

If they were actually conducting a hearing in good faith to determine whether the physicians who have been charged with committing acts against the best interests of AAPS, or inconsistent with its purposes should be disciplined as charged.   Such hearings have been traditionally held before the membership of AAPS because those members have an interest in making certain the disciplinary process is conducted in a fair and reasonable manner.

The issue for you to decide is therefore whether, as Stewart claims, Carbone, Cerrato, and Montes made the statement with improper motives abusing that privilege. One makes a false statement about another with improper motives if one's primary motive and purpose in making the statement is to gratify one's ill will, hostility and intent to harm the other, rather than to advance or protect AAPS', CARBONE's, CERRATO's, and /or MONTES' legitimate interests and/or  AAPS', CARBONE's, CERRATO's, and /or MONTES' duty to discipline members of

AAPS who commit acts against the best interests of the organization or inconsistent with its purposes by holding hearings before the Board of Directors under Bylaws Section 3.05.

If the greater weight of the evidence does not support Stewart's claim that AAPS, CARBONE, CERRATO, and /or MONTES  abused any privilege she had and the greater weight of the evidence does support the defense of privilege, then your verdict should be for AAPS, CARBONE, CERRATO, and /or MONTES .

However, if the greater weight of the evidence supports Stewart's claim that AAPS, CARBONE, CERRATO, and /or MONTES  abused any privilege she had, then your verdict should be for Stewart in the total amount of her damages.

## 405.3  GREATER WEIGHT OF THE EVIDENCE

| Request by Stewart | X | Request by Defendant | | Requested by | |
|---|---|---|---|---|---|
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | | Judge | |

Instruction No. **161**

   **"Greater weight of the evidence" means the more persuasive and convincing force and effect of the entire evidence in the case.**

### NOTES ON USE FOR 405.3

   1.   *Greater or lesser number of witnesses.* The committee recommends that no instruction be given regarding the relationship (or lack of relationship) between the greater weight of the evidence and the greater or lesser number of witnesses.

   2.   *Circumstantial evidence.* The committee recommends that no instruction generally be given distinguishing circumstantial from direct evidence. See *Nielsen v. City of Sarasota*, 117 So.2d 731 (Fla. 1960).

## 5  NEGLIGENCE

| Request by Stewart | X | Request by Defendant | | Requested by | |
|---|---|---|---|---|---|
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | | | |
| | | | | Judge | |

Instruction No. **62**

Negligence is the failure to use reasonable care, which is the care that a reasonably careful person would use under like circumstances. Negligence is doing something that a reasonably careful person would not do under like circumstances or failing to do something that a reasonably careful person would do under like circumstances.

**405.6  LEGAL CAUSE**

| Request by Stewart | X | Request by Defendant | | Requested by | |
|---|---|---|---|---|---|
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | | Judge | |

Instruction No. **163**

*a.    Legal cause generally:*

A [statement] [publication] is a legal cause of [loss] [injury [or] [damage] if it directly and in natural and continuous sequence produces or contributes substantially to producing such [loss] [injury] [or] [damage], so that it can reasonably be said that, but for the [statement] [publication], the [loss] [injury] [or] [damage] would not have occurred.

*b.    Concurring cause:*

In order to be regarded as a legal cause of [loss] [injury] [or] [damage] a [statement] [publication] need not be the only cause. A [statement] [publication] may be a legal cause of [loss] [injury] [or] [damage] even though it operates in combination with [the act of another] [some natural cause] [or] [some other cause] if the [statement] [publication] contributes substantially to producing such [loss] [injury] [or] [damage].

*c.    Intervening cause:*

*Do not use the bracketed first sentence if this instruction is preceded by the instruction on concurring cause.\**

\*[In order to be regarded as a legal cause of [loss] [injury] [or] [damage], [a statement] [publication] need not be its only cause.] A [statement] [publication] may also be a legal cause of [loss] [injury] [or] [damage] even though it operates in combination with [the act of another] [some natural cause] [or] [some other cause] occurring after the [statement] [publication] occurs if [such other cause was itself reasonably foreseeable and the [statement] [publication] contributes substantially to producing such [loss] [injury] [or] [damage]] [or] [the resulting [loss] [injury] [or] [damage] was a reasonably foreseeable consequence of the [statement] [publication] and the [statement] [publication] contributes substantially to producing it].

NOTES ON USE FOR 405.6

1.      Instruction 405.6a (legal cause generally) is to be given in all cases. Instruction 405.6b (concurring cause), to be given when the court considers it necessary, does not set forth any additional standard for the jury to consider in determining whether a defamation was a legal cause of damage but only negates the idea that a defendant is excused from the consequences of his defamation by reason of some other cause concurring in time and contributing to the same damage. Instruction 405.6c (intervening cause) is to be given only in cases in which the court concludes that there is a jury issue as to the presence and effect of an intervening cause.

2.      The jury will properly consider instruction 405.6a not only in determining whether defendant's defamation is actionable but also in determining whether claimant's conduct contributed as a legal cause to claimant's damage, thus reducing recovery.

3.      Instruction 405.6b must be given whenever there is a contention that some other cause may have contributed, in whole or part, to the occurrence or resulting injury. If there is an issue of aggravation of a preexisting condition or of subsequent injuries/multiple events, instruction 501.5a or 501.5b should be given as well. See *Hart v. Stern*, 824 So.2d 927, 932–34 (Fla. 5th DCA 2002); *Marinelli v. Grace*, 608 So.2d 833, 835 (Fla. 4th DCA 1992).

4.      Instruction 405.6c (intervening cause) embraces two situations in which defamation may be a legal cause notwithstanding the influence of an intervening cause: (1) when the damage was a reasonably foreseeable consequence of the defamation although the other cause was not foreseeable, *Mozer v. Semenza*, 177 So.2d 880 (Fla. 3d DCA 1965), and (2) when the intervention of the other cause was itself foreseeable, *Gibson v. Avis Rent-A-Car System, Inc.*, 386 So.2d 520 (Fla. 1980).

5.      *"Probable" results.* The committee recommends that the jury not be instructed that the damage must be such as would have appeared "probable" to the actor or to a reasonably careful person at the time of the defamation. In cases involving an intervening cause, the term "reasonably foreseeable" is used in place of "probable." The terms are synonymous and interchangeable. See *Sharon v. Luten*, 165 So.2d 806, 810 (Fla. 1st DCA 1964); Prosser, *Torts* 291 (3d ed.); 2 Harper & James, *The Law of Torts* 1137.

6.      The term "substantially" is used throughout the instruction to describe the extent of contribution or influence negligence must have in order to be regarded as a legal cause. "Substantially" was chosen because the word has an acceptable common meaning and because it has been approved in Florida as a test of causation not only in relation to defendant's negligence, *Loftin v. Wilson*, 67 So.2d 185, 191 (Fla. 1953), but also in relation to plaintiff's comparative negligence, *Shayne v. Saunders*, 176 So. 495, 498 (Fla. 1937).

## 405.10  DEFAMATION DAMAGES

| Request by Stewart | X | Request by Defendant | | Requested by | |
|---|---|---|---|---|---|
| Given as Proposed | | Given as Modified | | Given on Court's Motion | |
| Refused | | | | | |
| Withdrawn | | | | | |
| | | | | | Judge |

Instruction No. **164**

If you find for AAPS, you will not consider the matter of damages. But, if you find for Stewart, you should award Stewart an amount of money that will fairly and adequately compensate Stewart for such [loss] [injury] [or] [damage] as the greater weight of the evidence shows was caused by the [statement] [publication] in question. You shall consider the following elements of damage:

a.   *Injury to reputation or health; shame, humiliation, mental anguish, hurt feelings:*

Any injury to reputation or health and any shame, humiliation, mental anguish, and hurt feelings experienced in the past [or to be experienced in the future]. There is no exact standard for fixing the compensation to be awarded on account of such elements of damage. Any award should be fair and just in the light of the evidence.

b.   *Lost earnings, lost working time, lost earning capacity:*

(1).   *When lost earnings or lost working time shown:*

Any [earnings] [working time] lost in the past [and any loss of ability to earn money in the future].

(2).   *When earnings or lost working time not shown:*

Any loss of ability to earn money sustained in the past [and any such loss in the future].

c.   *Reduction to present value:*

Any amounts which you allow in damages for [loss of ability to earn money in the future] [or] [(describe any other future economic loss subject to reduction to present value)] should be reduced to their present money value [and only the present money value of such amounts should be included in your verdict] [and you should state in the verdict form provided to you both the total of such future damages and their present value].

*d.*        *Punitive damages:*

*(1). Bifurcated procedure:*

If you find for Stewart and against (name person or entity whose conduct may warrant punitive damages), you should consider whether, in addition to compensatory damages, punitive damages are warranted in the circumstances of this case as punishment and as a deterrent to others.

The trial of the punitive damages issue is divided into two parts. In this first part, you will decide whether the conduct of (name defendant whose conduct may warrant punitive damages) is such that punitive damages are warranted. If you decide that punitive damages are warranted, we will proceed to the second part during which the parties may present additional evidence and argument on the issue of punitive damages. I will then give you additional instructions, after which you will decide whether in your discretion punitive damages will be assessed and, if so, the amount.

*Standard if statement was on a matter of public concern:*

Punitive damages are warranted if you find by clear and convincing evidence that at the time of making the statement AAPS knew the statement was false or had serious doubts as to its truth; and if the greater weight of the evidence shows that (defendant's) primary purpose in making the statement was to indulge ill will, hostility, and an intent to harm Stewart.

*Standard if statement was not a matter of public concern:*

Punitive damages are warranted if you find by the greater weight of the evidence that AAPS', CARBONE's, CERRATO's MONTES' or RUBAKOVIC's primary purpose in making the statement was to indulge ill will, hostility, and an intent to harm Stewart.

[You may determine that punitive damages are warranted against one defendant and not the other[s] or against more than one defendant.]

*Use 503.1b(2)–b(4) as necessary for direct and vicarious liability.*

*Use 503.1c for second stage of bifurcated punitive damages procedure.*

*(2). Non-bifurcated procedure:*

If you find for Stewart and against (name person or entity whose conduct may warrant punitive damages), you should consider whether, in addition to compensatory damages, punitive damages are warranted in the circumstances of this case as a punishment and as a deterrent to others.

*Standard if statement was on a matter of public concern:*

Punitive damages are warranted if you find by clear and convincing evidence that at the time of making the statement AAPS knew the statement was false or had serious doubts as to its truth; and if the greater weight of the evidence shows that (defendant's) primary purpose in making the statement was to indulge ill will, hostility, and an intent to harm Stewart.

*Standard if statement was not a matter of public concern:*

Punitive damages are warranted if you find by the greater weight of the evidence that (defendant's) primary purpose in making the statement was to indulge ill will, hostility, and an intent to harm Stewart.

[You may determine that punitive damages are warranted against one defendant and not the other[s] or against more than one defendant.]

*Use 503.2b(2)–b(4)  as necessary for direct and vicarious liability.*

*Use 503.2c  for determination of amount of damages.*

## NOTES ON USE ON DEFAMATION INSTRUCTIONS

1. *Status of claimant or defendant decisive of First Amendment standards.* As set forth in instruction 405.7, if claimant was a public official or was a public figure for all or for the limited purposes in the case at hand, the First Amendment requires claimant to prove that defendant's statement was false, *Garrison v. Louisiana*, 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964), and that defendant made it with "actual malice." *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686, 95 A.L.R.2d 1412 (1964). As set forth in 405.8, if defendant was a member of the press or broadcast media publishing on a matter of public concern, the First Amendment requires claimant to prove falsity and fault. *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 775–76, 106 S.Ct. 1558, 89 L.Ed.2d 783 (1986); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 347, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). In Florida, a defendant is at fault if he was at least negligent. *Miami Herald Publishing Co. v. Ane*, 458 So.2d 239 (Fla. 1984). Until a standard for identifying "speech on a matter of public concern" is made clearer and manageable as a matter of law or fact, the committee treats any media defendant as entitled to instruction 405.8 status and assumes that any nonmedia defendant is governed by instruction 405.9. Despite criticism of the categorical distinction both on First Amendment grounds, *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 783–84, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985) (dissenting opinion), and for want of evenhandedness at common law, *infra* Note 3, neither the United States nor Florida Supreme Court has yet denied any media defendant instruction 405.8 status holding that the publication was not on a matter of public concern; and neither Court has yet exempted a non-media defendant from instruction 405.9 standards governing compensatory damage liability by declaring defendant's statement to be, as a matter of law or fact, of public concern. Status issues determining the choice of instructions 405.7, 405.8, and 405.9 are commonly decided as a matter of law, and therefore are omitted from these instructions. *Rosenblatt v. Baer*, 383 U.S. 75, 88, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966); *Friedgood v. Peters Publishing Co.*, 521 So.2d 236 (Fla. 4th DCA 1988); *Della-Donna v. Gore Newspapers Co.*, 489 So.2d 72 (Fla. 4th DCA 1986). If a status issue is deemed a jury question, it may be submitted by a preliminary instruction modeled after instruction 401.14 *et seq*. The court then must frame alternative liability issues chosen from instructions 405.7, 405.8, and 405.9.

2. *Actual malice, clear and convincing proof.* "Actual malice" has connotations other than its First Amendment meaning, so instruction 405.7 avoids the term and uses the definition instead: whether defendant in making the defamatory statement (about the public person claimant) knew his statement was false or seriously doubted its truth. Defendant's state of mind can be proved circumstantially. *St. Amant v. Thompson*, 390 U.S. 727, 732, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968); *Hunt v. Liberty Lobby*, 720 F.2d 631, 643 (11th Cir. 1983). Claimant's burden is proof by "clear and convincing" evidence. *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 773, 106 S.Ct. 1558, 89 L.Ed.2d 783, (1986); *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989).

3. *Truth or falsity, preponderance of evidence.* The First Amendment requires plaintiff to prove falsity in instructions 405.7 and 405.8 cases. Defendant must prove truth in instruction 405.9 cases because the common law presumes any statement made with defaming effect was false. *Jones, Varnum & Co. v. Townsend's Administratrix*, 21 Fla. 431 (1885). Accord, *Firestone v. Time, Inc.*, 460 F.2d 712, 722 (5th Cir. 1972) (Bell, J. concurring); *Curtis Publishing Co. v. Fraser*, 209 F.2d 1, 9 n. 6 (5th Cir. 1954); *Drennen v. Westinghouse Elec. Corp.*, 328 So.2d 52, 55 (Fla. 1st DCA 1976); *Miami Herald Publishing Co. v. Brautigam*, 127 So.2d 718, 723 (Fla. 3d DCA 1961). Moreover, Florida may have made truth a "defense" issue constitutionally, Note 5 *infra*. The issue is phrased as whether the statement "was false in some significant respect," instructions 405.7 and 405.8, or "was substantially true," instruction 405.9, not turning on insignificant detail, *e.g.*, *Times Publishing Co. v. Huffstetler*, 409 So.2d 112, 113 (Fla. 5th DCA 1982). Whether the First Amendment requires proof of falsity by a simple preponderance or by clear and convincing evidence (as on the actual malice issue), is unclear. *Harte-Hanks Communications, Inc.*, 491 U.S. 657, n. 2. The committee assumes "the greater weight" suffices for proof of falsity in instructions 405.7 and 405.8, as it does for proof of truth in instruction 405.9. The clear and convincing standard, instruction 405.4, is as defined in *Slomowitz v. Walker*, 429 So.2d 797 (Fla. 4th DCA 1983).

4. *Nodar's dictum: How does the First Amendment fault standard apply in 405.9?* In *Nodar v. Galbreath*, 462 So.2d 803 (Fla. 1984), the Florida Supreme Court held that if the First Amendment requires proof of negligence against the media, the common law should extend the same protection to all: "If common-law remedies for defamation are to be constitutionally restricted in actions against media defendants, they should also be restricted in actions against private, non-media speakers and publishers." *Nodar*, 462 So.2d at 808. *Nodar* was decided, however, on "common-law principles of qualified privilege," *id.*, so it was unnecessary to decide "how the negligence standard applies in this case." *Id.* Pending further implementation in Florida of *Nodar's* dictum, or a decision that one's media status is not decisive, instruction 405.8 continues to distinguish media defendants, publishing on matters of public concern, from all other defendants; instruction 405.7 applies to public person claimants; and all other cases fall under instruction 405.9, which makes no reference to negligence.

5. *Florida's truth "and good motives" defense.* Article I, §4, Florida Constitution (1968) provides what the 1885 Constitution referred to in the title to §13 of the Declaration of Rights as a "defense to libel": "In all ... actions for defamation the truth may be given in evidence. If the matter charged as defamatory is true and was published with good motives, the party shall be ... exonerated." "Truth and good motives," despite its history, is not well elaborated by the case law. (Note that the United States Supreme Court has reserved the question whether in a First Amendment context it can ever be actionable, whatever the motive, to speak the truth. *The Florida Star v. B.J.F.*, 491 U.S. 524, 109 S.Ct. 2603, 105 L.Ed.2d 443 (1989).) Pending a Florida decision explaining its meaning and effect, the committee assumes that the "truth and good motives" provision tolerates at least as wide a range of motives for speaking the truth as the common law tolerates for speaking untruthfully in a privileged situation. Instruction 405.9b therefore frames the issue as to whether defendant spoke both truthfully and with "good motives" and, if so, requires a verdict for defendant. Only if the jury finds otherwise is it then directed, instructions 405.9c and 405.9d, to decide whether defendant had a qualified privilege and, if so, whether he or she spoke with express malice resulting in liability despite the privilege. Truth-or-falsity is not submitted a second time because proof of truth is not necessary to a qualified privilege defense.

6. *Qualified privilege for defendant under Florida law.* Defendant has a qualified privilege to make a false defamatory statement if he or she has reason to speak concerning claimant to an appropriate audience on a particular subject or occasion. Such a person is not liable without proof of "express malice" as described in instruction 405.9c. *Nodar*, 462 So.2d at 811 n.8; *Boehm v. Kovens*, 554 So.2d 622 (Fla. 3d DCA 1989). *Nodar* describes the qualified privilege as granted

to one having an interest or a legal, moral, or social duty in regard to a certain subject, when speaking to another "having a corresponding interest or duty." Examples: "a communication to an employer regarding his employee's performance"; "communications for bona fide commercial purposes where the interest to be protected is the recipient's"; "statements of a citizen to a political authority regarding matters of public concern." Whether there was a privilege, apart from the question of its abuse, may be determined by the court if the evidence is undisputed. But if not, a threshold instruction as in 405.9b is necessary, followed by instructions 405.9c or 405.9d or both. See, *e.g.*, *Knepper v. Genstar Corp.*, 537 So.2d 619 (Fla. 3d DCA 1988); *Drennen v. Westinghouse Electrical Corp.*, 328 So.2d 52 (Fla. 1st DCA 1976). Contrast *Nodar*, 462 So.2d at 810.

      7.    *Nominal and punitive damages.* Nominal damages for "presumed" injury, as distinguished from a small actual injury, cannot be recovered against media defendants without showing actual malice as required by instruction 405.7 of public claimants. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349–50, 347, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974); *Dun & Bradstreet v. Greenmoss Builders*, 472 U.S. 749, 760–61, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985). In instruction 405.9 cases, punitive damages may be awarded upon a finding of liability. See *Ault v. Lohr*, 538 So.2d 454 (Fla. 1989). Potential confusion in a general verdict form may be reduced by requiring a special verdict on liability, as in *Ault*.

**Vicarious Responsibility**

**165**

**103. Multiple Parties**

[There are five defendants in this trial. You should decide the case against each defendant separately as if it were a separate lawsuit. Each defendant is entitled to separate consideration of his or her own defenses.]

[Different aspects of this case involve different parties (plaintiff and defendants). Each instruction will identify the parties to whom it applies. Pay particular attention to the parties named in each instruction.]

[*or*]

[Unless I tell you otherwise, all instructions apply to each defendant.]

CACI Pg. 15

166

## 3700. Introduction

**A [partnership/corporation] is responsible for harm caused by the
wrongful conduct of [his/its] agents/partners while acting within the
scope of their [authority].**

CACI Pg. 590

**167**

### 3701. Tort Liability Asserted Against Principal— Essential Factual Elements

**Stewart claims that she was harmed by AAPS's agent by means of misrepresentations, defamation, and interference with prospective economic advantage and civil rights violations.**

**Stewart also claims that AAPS is responsible for the harm because Carbone, Cerrato, and Montes and her AAPS affiliated residency trainer were acting as its agent when the incident occurred.**

**If you find that AAPS's misrepresentations, defamation, and interference with prospective economic advantage and civil rights violations harmed Stewart, then you must decide whether AAPS is responsible for the harm. AAPS is responsible if Stewart proves both of the following:**

**1. That Carbone, Cerrato, and Montes and her AAPS affiliated residency trainer were AAPS's agents; and**

**2. That Carbone, Cerrato, and Montes and her AAPS affiliated residency trainer were acting within the scope of their agency when any one of them harmed Stewart.**

CACI Pg. 592

**168**             **3703. Legal Relationship Not Disputed**

**In this case AAPS was the employer of Carbone and the partner of
affiliated residency trainer and Cerrato and Montes were officers of
AAPS.**

**If you find that Carbone, Cerrato, and Montes and her AAPS affiliated
residency trainer were acting within the scope of their employment
and/or agency when the incident occurred, then AAPS is responsible
for any harm caused by Carbone, Cerrato, and Montes and her AAPS
affiliated residency trainer's misrepresentations, defamation, and
interference with prospective economic advantage and civil rights
violations.**
CACI Pg. 596

*169*

## 3710. Ratification

**Stewart claims that AAPS is responsible for the harm caused by her AAPS affiliated residency trainer's conduct because it approved that conduct after it occurred. If you find that Stewart's residency trainer harmed Stewart, you must decide whether AAPS approved that conduct. To establish her claim, Stewart must prove all of the following:**

**1. That her residency trainer intended to act on behalf of AAPS;**
**2. That AAPS learned of her residency trainer's conduct after it occurred; and**
**3. That AAPS approved of her residency trainer's conduct. Approval can be shown through words, or it can be inferred from a person's conduct. [Approval can be inferred if a person voluntarily keeps the benefits of [his/her/its] [representative/employee]'s unauthorized conduct after [he/she/it] learns of the unauthorized conduct.]**

*New September 2003*

170

## 3711. Partnerships

A partnership and each of its partners are responsible for the wrongful
conduct of a partner acting within the scope of his or her authority.
You must decide whether a partnership existed in this case. A
partnership is a group of two or more persons who own a business in
which all the partners agree to share the profits and losses. A
partnership can be formed by a written or oral agreement or by an
agreement implied by the parties' conduct.

*New September 2003*
Pg. 618

171

### 3720. Scope of Employment

**Stewart must prove that Carbone was acting within the scope of his employment when Stewart was harmed. Conduct is within the scope of employment if:**

**(a) It is reasonably related to the kinds of tasks that Carbone was employed to perform; or**

**(b) It is reasonably foreseeable in light of the employer's business or Carbone's responsibilities.**

*New September 2003*

172

**3722. Scope of Employment—Unauthorized Acts**
**An employee's unauthorized conduct may be within the scope of**
**employment if the conduct was committed in the course**
**of a series of acts authorized by the employer] [or] [the conduct arose**
**from a risk inherent in or created by the enterprise].**
**[An employee's wrongful or criminal conduct may be within the scope**
**of employment even if it breaks a company rule or does not benefit**
**the**
**employer.]**


CACI Pg. 631