O

# United States District Court
# Central District of California

PATRICIA STEWART, D.O.,

    Plaintiff,

    v.

AMERICAN ASSOCIATION OF PHYSICIAN SPECIALISTS, INC.; WILLIAM CARBONE; ROBERT CERRATO; STEPHEN MONTES; SUSAN SLOMINSKY; SVETLANA RUBAKOVIC; and DOES 1-100,

    Defendants.

Case № 5:13-cv-01670-ODW (DTBx)

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [236] [237]**

## I.   INTRODUCTION

This action arises from the termination of Plaintiff Patricia Stewart's ("Plaintiff") membership with the American Association of Physician Specialists, Inc. ("AAPS").   Plaintiff alleges that Defendants AAPS, William Carbone, Stephen Montes, and Svetlana Rubakovic's (collectively, "Defendants") decision to terminate her was fraudulent, defamatory, discriminatory, and not reached in accordance with AAPS's bylaws.   Defendants now move for summary judgment on all of Plaintiff's claims, and Plaintiff moves for summary judgment on its breach of contract claim. For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN**

**PART** Defendants' Motion, and **DENIES** Plaintiff's Motion.[1]  (ECF Nos. 236, 237.)

## II.    FACTUAL BACKGROUND

AAPS is a national, non-profit corporation that represents the interests of its 3,000-plus member physicians, and provides those physicians with the opportunity to be certified by its official board certifying body ABPS as a "Diplomate". (Plaintiff's Separate Statement ("SS"), ¶2.)

Membership with AAPS and Diplomate certification by ABPS are different and distinct.  Becoming a member only requires a physician to hold a medical license and to pay annual dues, and it provides access to certain benefits such as continuing medical education and business development.   (Additional Facts ("AF"), 52) Diplomate certification, on the other hand, requires the member to pass a certification examination and to pay certification maintenance fees, and to be board certified in a particular medical specialty.  (AF 53.)  It also requires the completion of certain residency and training requirements.   (AF 51.)  Finally, maintaining the Diplomate certification requires the taking and passage of the certification exam every eight years.  Membership in AAPS is not a requirement for ABPS certification; a physician can be an ABPS Diplomate without being a member of AAPS.  (AF 54.)

Once a physician has been certified, the Diplomate will remain certified, and ABPS will attest to certification, unless and until one of the following occurs: (1) failing to timely pay annual certification maintenance fees; (2) failing the recertification exam; (3) failing to sign the required annual attestation; or (4) losing his or her license to practice medicine.  (AF 56.)  If a Diplomate fails to timely remit all necessary fees, he or she will not lose certification, but ABPS will not attest to the certification.  Instead, ABPS will respond to any certification inquiry by stating that it

---

[1]      After considering the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

cannot confirm the certified status of that physician due to failure to pay certification maintenance fees.  (AF 57.)

On June 22, 2011, Dr. William Okerblom, who is Plaintiff's husband but not an AAPS member, prepared a document entitled "Preliminary Legal Opinion Regarding the Likely Effects of the Suspension of Drs. Castillo, Geller and Klein Upon the Board-Certifying and Non-Profit Status of the AAPS."  (AF 71.)  Plaintiff distributed the "Preliminary Opinion" to AAPS members at AAPS's annual meeting in Tysons Corner, Virginia, in June 2011.   (AF 72.)   Dr. Okerblom wrote that "several concerned physician members and leaders of your organization have authorized me" to make a formal demand on their behalf (*See* Exhibit 2 to WC Decl. to MSJ (ECF Doc. #236-7 & #236-8), p.40.), but did not identify any particular person that he was representing by way of his correspondence.

On or about May 22, 2012, AAPS filed its First Amended Answer, Affirmative Defenses and Counterclaims in an existing Florida Litigation and added Plaintiff as a counter-defendant.  (*See* MSJ RFJN6, Ex. 3, p.33 (ECF Doc #236-3).)

AAPS's bylaws authorize its president to appoint committees.  (AF 76) Accordingly, in or around April 2012, then-president Dr. Robert Cerrato appointed a disciplinary committee—consisting of Dr. Montes, Dr. Wallace, and Dr. Maggio—to conduct disciplinary hearings for certain AAPS members, including Plaintiff, against whom disciplinary charges were to be brought. (AFs 77 & 78.)  On May 8, 2012, Dr. Cerrato wrote to Plaintiff notifying her that, pursuant to Section 3.05 of AAPS's bylaws, AAPS would be holding a special meeting of the Disciplinary Committee on June 9, 2012 in Tampa, Florida to consider charges against her of conduct injurious to the best interests of AAPS and/or incompatible with its purposes.  (AF 79.)  Dr. Cerrato's letter also informed Plaintiff that the potential discipline could include termination of membership privileges.  (*See* Exhibit 1 to Declaration of Dr. Robert Cerrato in support of Defendants' Motion for Summary Judgment ("RC Decl. to

1  MSJ") (ECF Doc. #236-11), p.5.)  The letter also informed her that she could appear
2  in person, with or without counsel, to present evidence that she was qualified to
3  remain a member in good standing with AAPS.  (*Id.*)

4         On May 24, 2012, Plaintiff sent a letter to each member of the Board refuting
5  the allegations made against her.  Plaintiff also objected to having to appear before
6  the Disciplinary Committee on the basis that individuals on the Disciplinary
7  Committee purportedly had a conflict of interest such that they were unable to
8  provide her with a fair hearing.  (AF 80.)

9         Plaintiff did not appear for her scheduled disciplinary hearing on June 9, 2012.
10  (AFs 83 & 84.)  As a result, on June 10, 2012, Dr. Montes sent an e-mail to the AAPS
11  Board recommending that Plaintiff's membership with AAPS be terminated.  (AF
12  85.)  On June 13, 2012, the Board voted to terminate Plaintiff's membership with
13  AAPS. (AF 86.)

14         On September 16, 2013, Plaintiff filed this action, and on January 22, 2015,
15  Plaintiff filed a Second Amended Complaint alleging breach of contract; four counts
16  of fraud; discrimination under Title VII; violations of the Unruh Civil Rights Act
17  ("Unruh") and the Fair Employment and Housing Act ("FEHA"); interference with
18  prospective economic advantage; defamation; and violations of California's Unfair
19  Competition Law, codified in Business Professions Code §17200 *et seq.* ("UCL").
20  (ECF Nos. 1, 162.)  Defendants moved for summary judgment on all claims on
21  August 17, 2015.  (ECF No. 236.)  Plaintiff timely opposed, and Defendants timely
22  replied.  (ECF Nos. 260, 266.)  On August 17, 2015 Plaintiff moved for summary
23  judgment as to her breach of contract claim.  Defendants timely opposed, and Plaintiff
24  timely replied.  (ECF Nos. 245, 259.)  These Motions are now before the Court for
25  consideration.

### III.   LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. Proc. 56(a).  A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  *See id.*  On an issue as to which the nonmoving party will have the burden of proof, however, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case.  *See id.*

If the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  In evaluating the evidence presented in support of or in opposition to summary judgment, the court does not make credibility determinations or weigh conflicting evidence.  Rather, it draws all inferences in the light most favorable to the nonmoving party. *See T.W. Electrical Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987).   However, conclusory or speculative testimony is insufficient to meet this burden, or to raise genuine issues of fact defeating summary judgment.  *See Nelson v. Pima Community College*, 83 F.3d 1075, 1081–82 (9th Cir. 1996).

## IV.   DISCUSSION

Defendants contend that all of Plaintiff's claims fail as a matter of law.  Plaintiff refutes Defendants' arguments and instead contends that her breach of contract claim should be granted as a matter of law.  The Court considers each argument in turn.

## Defendants' Motion for Summary Judgment

### A. BUSINESS JUDGMENT RULE

Defendants contend that the business judgment rule protects the decision of the Board to terminate Plaintiff's membership because the decision was made in good faith based on the information available at the time.  (SUF 41, 42, 44.)  Defendants argue that Plaintiff's termination served the rational business purpose of protecting AAPS's members and the organization as a whole from the disruptive and defamatory communications Plaintiff and her husband circulated to members.

"The business judgment rule is premised on the notion that management of the corporation is best left to those to whom it has been entrusted, not to the courts." *Desaigoudar v. Meyercord*, 108 Cal. App. 4th 173, 183 (2003), as modified on denial of reh'g (May 28, 2003) citing *Gaillard v. Natomas Co*., 208 Cal. App. 3d 1250, 1263 (1989).  "The rule requires judicial deference to the business judgment of corporate directors so long as there is no fraud or breach of trust, and no conflict of interest exists." *Id.* at 203.

Under the business judgment rule, "a director is not liable for a mistake in business judgment which is made in good faith and in what he or she believes to be the best interests of the corporation."  *Barnes v. State Farm Mut. Auto. Ins. Co*., 16 Cal. App. 4th 365, 378-79 (1993). "The business judgment rule is premised on the notion that management of the corporation is best left to those to whom it has been entrusted, not to the courts."  *Desaigoudar v. Meyercord*, 108 Cal. App. 4th 173, 183 (2003), as modified on denial of reh'g (May 28, 2003) citing *Gaillard v. Natomas Co*., 208 Cal. App. 3d 1250, 1263 (1989).  "The rule requires judicial deference to the business judgment of corporate directors so long as there is no fraud or breach of trust, and no conflict of interest exists."  *Id.* at 203.  One of the grounds underlying the business judgment rule is that directors of a corporation should be given wide latitude in the handling of corporate affairs because "the hindsight of the judicial process is an

imperfect device for evaluating business decisions." *Lamden v. La Jolla Shores Clubdominium Homeowners Assn.*, 21 Cal.4th 249, 259 (1999).

Plaintiff makes two baseless arguments in response. Plaintiff argues that the business judgment rule does not apply because it only pertains to liability of directors as individuals, and further because the only claims she has against the directors are those sounding in defamation and intentional interference with economic relations, which she claims are not subject to the business judgment rule. Plaintiff is mistaken in both respects.

However, the fact is that Plaintiff's allegations of fraud, bad faith, and conflicts of interest create a factual dispute as to whether the business judgment rule should be applied, thus precluding its application as a matter of law. As such, summary judgment as to this claim **DENIED**.

**B.    BREACH OF CONTRACT**

Plaintiff's breach of contract claim is centered on Defendants' breach of the AAPS bylaws, which largely fails as a matter of law. However, there is a factual dispute as to whether Plaintiff's termination was carried out in a good faith manner.

First, Plaintiff contends that AAPS failed to provide her with 30 days' notice prior to terminating her membership, in violation of AAPS's bylaws. The uncontroverted facts establish that AAPS notified Plaintiff of the pending disciplinary action on May 8, 2012, and informed her that she could attend the disciplinary hearing on June 9, 2012. (UF 53.) Plaintiff's disciplinary hearing, which she did not attend, was in fact held on June 9, 2012, 30 days after she was notified of the disciplinary action. (UFs 53 & 65.) On June 13, 2012, the Board voted to terminate Plaintiff's membership with AAPS. (UF 68.) On June 18, 2012, AAPS sent a letter to Plaintiff informing her that it had terminated her membership. (UF 69.) While the letter erroneously stated that Plaintiff's membership had been terminated on May 30, 2012, as opposed to the actual date on which the vote for termination had occurred, June 13,

2012, AAPS brought the error to Plaintiff's attention in a letter dated June 22, 2012, which informed Plaintiff of the correct date.  (UF 70.)

While Plaintiff attempts to refute these facts, the opposition fails to cite to any supporting or admissible evidence that raises an issue of material fact.  Defendants, on the other hand, establish that the disciplinary hearing actually took place on June 9, 2012 by presenting evidence of the expenses borne by AAPS for the use of the hotel where the hearing was conducted and by Dr. Montes's travel expenses.  (*See* AD Decl., Ex.3, pp.14-23.)   Further, Defendants establish that the Board terminated Plaintiff's membership on June 13, 2012 by presenting the minutes of that meeting. (*See* AD Decl., Ex.12, p.158.)  Plaintiff can point to no evidence to support her claim that her membership was terminated prior to June 13, 2015.  Accordingly, this aspect of Plaintiff's breach of contract claim is meritless.

Second, Plaintiff alleges that AAPS failed to provide her with a hearing before the Board prior to terminating her membership.  (SAC ¶110)  However, there is no requirement in AAPS's bylaws, or any other purported agreement between Plaintiff and AAPS which mandates that a member be permitted to appear before the entire Board prior to termination of membership.  (UF 81.)  Instead, the bylaws provide that a member facing discipline "may appear in person" and "submit such evidence as he or she deems proper to show that he or she is qualified to continue as a member of the Association."  (UF 82.)  Plaintiff was in fact permitted to appear in person before, and submit to, AAPS's disciplinary committee; she simplychose not to appear at the hearing.  (UF 53, 55, 63 & 64.)

The bylaws further require a full vote by the Board, which was also held prior to her termination.  (UF 68 & 83.)   The bylaws allow the president to delegate authority to duly appointed committees, which was done by Dr. Cerrato in appointing the disciplinary committee, which recommended termination to the Board.  (UFs 49-51 & 67, RC Decl., Ex.4, p.17.)  Thus, AAPS terminated Plaintiff's membership in

complete compliance with the terms of its bylaws and, as such, this aspect of Plaintiff's breach of contract claim is similarly meritless.

However, both parties agree that Plaintiff's termination must be fair, reasonable, and carried out in good faith. (Mot. 21, Opp'n 13.)  As discussed above, the Court finds that AAPS provided Plaintiff with ample notice of the charges and the opportunity to appear before AAPS's disciplinary committee.  The Court cannot, however, find as a matter of law that Plaintiff's termination was carried out fair, reasonable, and good faith manner based on factual disputes surrounding the purported allegations of fraud, bad faith and conflicts of interest on behalf of AAPS. Therefore, summary judgment as to this claim is **DENIED**.

## C.   EMPLOYMENT AGENCY OR LABOR ORGANIZATION

Plaintiff's second cause of action is brought against AAPS under Title VII, which prohibits certain unlawful employment practices.  *See e.g. Urbano v. Cont'l Airlines, Inc.*, 138 F.3d 204, 205 (1998).  It is undisputed that Plaintiff is not, and never has been, an employee of AAPS.  (UF 24.)  Plaintiff asserts that she is nevertheless protected under Title VII because AAPS is either an employment agency or a labor organization.  However, the Court finds that AAPS is neither.

Title VII provides, in relevant part, that "[i]t shall be an unlawful employment practice for *an employment agency* to fail or refuse to refer for employment, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin, or to classify or refer for employment any individual on the basis of his race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(b) (emphasis added).  This statute also defines an "employment agency" as "any person *regularly undertaking* with or without compensation to procure employees for an employer or to procure for employees opportunities to work for an employer and includes an agent of such a person."  *Id.* § 2000e(c) (emphasis added).

The law has long been clear that "the statutory requirement that an employment

agency be one that 'regularly' undertakes to procure employees or employment opportunities indicates that the Congress had in mind to include only those engaged to a significant degree in that kind of activity as their profession or business." *Brush v. S.F. Printing Co.*, 315 F. Supp. 577, 580 (N.D. Cal. 1970).  Further, it has been found that for a defendant to be an employment agency, it must "actively assist[] participants in the job search process" and "the pursuit of employment . . . [must be] a central and recurring component of the program." *Wilborn v. S'ern. Union State Comty. Coll.*, 720 F. Supp. 2d 1274, 1291-1292 (M.D. Ala. 2010).

In *Bonomo v. Nat'l Duckpin Bowling Cong., Inc.*, 469 F. Supp 467 (D. Md. 1979), a plaintiff also sued a non-profit corporation, the National Duckpin Bowling Congress ("NDBC"), which promulgates rules and regulations for duckpin bowlers, monitors duckpin tournaments and tours, qualifies tournament or tour directors for employment in the tournaments and tours, and generally regulates the conduct of participants in sanctioned duckpin bowling events.  *Id.* at 469.  The plaintiff alleged that the NDBC was liable under a claim of gender discrimination because it was an "employment agency" under 42 U.S.C. §2000e(c). The court disagreed, holding that, "[w]hile certification or referral of tournament directors may be one of its ancillary functions, the business of the NDBC is the overall regulation and administration of its members engaging in the sport of duckpin bowling." *Id.* at 472.

Similarly, here, AAPS is not in the business of employee placement.  (UFs 22 & 23.)  There is no evidence, such as in *Wilborn*, of anyone at AAPS having any involvement in assisting members with procuring employment.  Instead, AAPS simply has a page on its website which allows potential employers to list job opportunities.   AAPS's only involvement with members seeking employment opportunities is an online bulletin board, which is an ancillary function of the organization.  AAPS is a non-profit organization that provides practicing physicians with experience in their specialty and an opportunity for certification.  As such, AAPS

lacks a visible nexus with the creation and continuance of direct employment relationships between third parties, and therefore does not constitute an employment agency under Title VII as a matter of law.

AAPS is also not a "labor organization," as Plaintiff contends. 42 U.S.C. § 2000e(d) defines a "labor organization" as being "engaged in an industry affecting commerce, and any agent of such an organization, . . . which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours, or other terms or conditions of employment, and any conference, general committee, . . . so engaged which is subordinate to a national or international labor organization." AAPS does not deal with employers concerning grievances, labor disputes, wages, rates of pay, hours, or other terms or conditions of employment. (UF 90.) Accordingly, Plaintiff's claim that AAPS is a labor organization must fail.

Because AAPS is neither a labor agency nor a labor organization, summary judgment as to Plaintiff's Title VII claim is **GRANTED**.

In addition, Plaintiff's fourth cause of action alleges discrimination and retaliation under FEHA. (UF 24.) Plaintiff contends that AAPS is an "employment agency" under FEHA, which defines an "employment agency" as "any person undertaking *for compensation* to procure employees or opportunities to work." *See* Cal. Gov't. Code § 12926(e) (emphasis added). Here, the uncontroverted facts establish that AAPS does not receive any compensation in connection with the career bulletin. (UF 23.) Therefore, summary judgment as to this claim is **GRANTED**.

## D.   UNRUH CIVIL RIGHTS ACT

Plaintiff's third cause of action against AAPS alleges violations of the Unruh Civil Rights Act for alleged discrimination and retaliation on the basis of gender. Plaintiff alleges that AAPS refused to allow her to enter the California meeting on the grounds she is female and that her "gender was a motivating yet arbitrary factor in

AAPS's discriminatory and retaliatory acts . . . [and] [a]s such, AAPS denied [her] full and equal rights guaranteed by the California Civil Code § 51." (SAC ¶134.) Plaintiff further alleges she was treated differently from male members of AAPS who were also contesting disciplinary charges and that male members were afforded greater due process under AAPS's Bylaws. (SAC ¶ 133.)

The Act provides, in relevant part, that all persons "are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of any kind whatsoever." Cal. Civ. Code § 51(b). The Act goes on to specify that the statute "shall not be construed to confer any right or privilege on a person . . . that is applicable alike to persons of every sex, color, race, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation or to persons regardless of their genetic information." *Id*. § 51(c). In other words, in order to prevail on a claim of gender discrimination under the Act, Plaintiff must establish that her gender was a "substantial motivating reason" for the termination of her membership. *See* Judicial Council of California Civil Jury Instructions (CACI) 3060. Not only must there be a direct link between Plaintiff's gender and the purportedly discriminatory action, the discrimination must be intentional. *See Harris v. Capital Growth Investors XIV*, 52 Cal. 3d 1142, 1149 (1991).

Plaintiff's Unruh Act claim is based upon her allegation that she and another female, Dr. Radentz, were not permitted access to the California meeting, while Drs. Klein, Castillo, Geller, and Cressey (who all are male) were not excluded. This contention misses the very obvious distinction between these doctors, which has no basis in gender: as of June 25, 2012, Plaintiff and Dr. Radentz were no longer members in good standing with AAPS as of the date of the annual meeting, while the

other male doctors were.   (UF 74.)   AAPS's bylaws very clearly provide that participation in AAPS activities is open only to AAPS members in good standing. (*See* Ex.4 to AD Decl., p.31.)

Similarly, Defendants argue that the termination of Plaintiff's membership, when the male Physicians remained members had no correlation to gender.   Instead, AAPS presents evidence that they moved forward with their intended disciplinary action against only those members that had not obtained a court order enjoining the proceedings.   Defendants contend that the two members who chose not to participate in the Florida action happened to be female was nothing more than a coincidence and in no way establishes any nexus between gender and any act on the part of AAPS. Plaintiff of course states that her termination is based on a continuing pattern of sex discrimination on the part of the Defendants.

While the Court is inclined to agree with Defendants on this matter, it cannot hold as a matter of law that Plaintiff's gender was not a motivating factor in her termination or exclusion.   Therefore, because a reasonable jury could reach more than one conclusion on the matter, summary judgment is **DENIED**.

**E.   FRAUD**

### 1.  Intentional Misrepresentation

Plaintiff's second count for intentional misrepresentation alleges that she was "induced" to "give up her position in an ABMS accredited residency program" by the representation that "AAPS held itself to higher standards of ethics than AOA or ABMS." (SAC ¶ 151.)  Plaintiff admits that this representation was made to her in the early 1990s. (SAC ¶22.)

The statute of limitations for a claim of fraud or mistake in California is three years.   *See* Cal. Code Civ. Proc. § 338(d).   For a fraud claim, the statute of limitations can be tolled pursuant to the "discovery rule."   Under the discovery rule, a cause of action "is not deemed to have accrued until the discovery, by the

aggrieved party, of the facts constituting the fraud or mistake."  *Id.*  A plaintiff need not be aware of the whole panoply of relevant facts before the statute of limitations is triggered.  As the California Supreme Court held in *Jolly v. Eli Lilly & Co.*:

> Under the discovery rule, the statute of limitations begins to run when Plaintiff suspects *or should suspect* that her injury was caused by wrongdoing, that someone has done something wrong to her....
> a plaintiff need not be aware of the specific 'facts' necessary to establish the claim....  *Once Plaintiff has a suspicion of wrongdoing,* and therefore an incentive to sue, she must decide whether to file suit or sit on her rights so long as a suspicion exists, it is clear that Plaintiff must go find the facts, *she cannot wait for the facts to find her.*

44 Cal. 3d 1103, 1111 (1988) (emphasis added).

First, Defendants state that this cause of action is time barred because Plaintiff first learned that AAPS did not hold itself to higher ethical standards than AOA or ABMS in 2002.  For this contention, Defendants rely on Uncontroverted Fact 91.  UF 91 states, "Plaintiff came to the realization that certification with the AOA and/or the ABMS was superior to certification with ABPS in or around 2002."  UF 91 is not directly on point with Plaintiff's allegation that AAPS represented to her that it had higher ethical standards than AOA or ABMS.  Thus, Defendants' evidence fails to prove its point.

Next, Defendants state that this cause of action is time-barred because Plaintiff alleged that she was subjected to sexual harassment in or around 1996 (SAC ¶27), and that AAPS took no action to address the alleged harassment despite her bringing it to AAPS's attention.  Therefore, Defendants state that this claim fails as a matter of law because Plaintiff has been on notice of the fact that AAPS is less ethical since 1996.

However, Plaintiff contends that she learned about Carbone and Montes' unethical conduct and AAPS support of that unethical conduct on or around the second half of  2012 during a review of discovery in the action brought against her in

Florida lawsuit.  (MF-241)   Plaintiff states that it was not until these events occurred that the true character of AAPS as an unethical organization was revealed.

Therefore, it is unclear whether Plaintiff knew or should have known after the events in 1996 that AAPS was a less "ethical" organization than previously stated. While Plaintiff fails to present any evidence explaining while this representation was not mere puffery, a factual question exists whether Defendants' acts in 1996 were sufficient to put Plaintiff on notice of Defendants' alleged wrongdoing.  Summary judgment on this count is therefore **DENIED**.

### 2.  False Promise

Plaintiff's third count alleging fraud against defendant William Carbone is based upon her contention that "On October 19, 2010 Mr. Carbone sent Patricia Stewart an email in which he promised her that if she diligently carried out her duties as an officer of the Academy of Dermatology, that she would not be exposing herself to retaliation or abuse by the leadership of AAPS."  (SAC ¶ 58.)

To establish a claim for "false promise" Plaintiff must show: 1) that AAPS made a promise to Plaintiff; 2) that AAPS did not intend to perform the promise when it was made; 3) that AAPS intended that Plaintiff rely on the promise; 4) that Plaintiff reasonably relied on the promise; 5) that AAPS did not perform the promised act; 6) Plaintiff was harmed; and 7) that Plaintiffs reliance on AAPS's promise was a substantial factor in causing Plaintiff's harm.  *See* CACI 1902.

Plaintiff cannot establish the first element of her "false promise" claim.  The email upon which Plaintiff relies does not say that "if she diligently carried out here duties as an officer of the Academy of Dermatology, that she would not be exposing herself to retaliation or abuse by the leadership of AAPS."  Instead, Mr. Carbone simply stated, "We will never go back to where we were.  That's a promise."  (UF 27.)  The alleged promise that forms the basis of Plaintiff's "false promise" claim is vague, unfounded, and unsubstantiated.  In fact, what Mr. Carbone was promising

1   was that they would never go back to was "[t]he lack of good governance of the

2   board." (UF 29.)  Thus, Plaintiff cannot establish the required element of a promise,

3   and summary judgment as to this count is **GRANTED**.

4   ### 3.  False Promise

5   Plaintiff's fourth count of misrepresentation stems from a July 27, 2012 letter to

6   Plaintiff from Dr. Cerrato, informing her that her request for an appeal had been

7   granted and that a hearing date would be set accordingly.   Because an appeal hearing

8   was never held, Plaintiff contends that the letter was an intentional misrepresentation.

9   However, Plaintiff did not present any evidence to support the allegation that the

10  failure to provide her with an appeal hearing was intentional.   To the contrary, Dr.

11  Cerrato attests that the failure was inadvertent.   (UF 79.)  As noted above, to prevail

12  on her claim of false promise, Plaintiff must establish that Dr.Cerrato did not intend to

13  perform the promise when it was made.  Because a factual dispute exists as to whether

14  there was an intent to defraud, the court **DENIES** summary judgment as to this count.

15  ### 4. Misrepresentation

16  Plaintiff's fifth count of misrepresentation alleges that Defendants intentionally

17  misrepresented to her that their decision to terminate her membership in AAPS would

18  have no effect upon her status as a board certified Dermatologist with ABPS.

19  However, no misrepresentation took place here.  Defendants' June 8, 2012 letter

20  stated, "termination of your membership in AAPS will not in any way affect your

21  board certification status with American Board of Physician Specialties

22  ("ABPS")."  (Ad Decl., Ex. 2, p. 11.)   Plaintiff presents no evidence that the

23  termination has affected her certification status; she remains certified with ABPS,

24  subject to her payment of past due Certification Maintenance Fees. (UFs 12, 25.)  In

25  addition, certification with ABPS does not automatically terminate without action on

26  the part of AAPS, and AAPS has taken no action to terminate Plaintiff's certification.

27  (UFs 37-38.)  As such, summary judgment as to this count is **GRANTED**.

28

## F.   DEFAMATION

Plaintiff's defamation claim is time-barred as to all defendants as a matter of law.  The claim is based on three alleged instances of defamation: 1) AAPS's March 28, 2012, message to members about the Florida counterclaim; 2) the May 30, 2012 letter from Dr. Ilowite to the members of the Dermatology Academy; and 3) statements made at the California meeting.  (UF 48.)  Plaintiff contends that the March 28 and May 30 letters originated from Florida, but she offers no evidence of this.

The statute of limitations for defamation in California is one year.   *See* Cal. Code Civ. Proc. § 340.  The statute of limitations for defamation in Florida is two years.  *See* Fla. Stat. § 95.11(4)(g).  Plaintiff filed this action September 16, 2013, meaning Plaintiff's defamation claim would be time-barred in California but not Florida.  California applies the 'governmental interest' approach to conflict of law issues.  *Deutsch v. Turner Corp.*, 324 F.3d 692, 716 (9th Cir. 2003) citing *Hurtado v. Super. Court,* 11 Cal. 3d 574, 579–80 (1974).

On the issue of which statute of limitations applied, the court *Deutsch v. Turner Corp.* stated:

> Under this approach, the correct choice of law depends on "an analysis of the respective interests of the states involved." Where the conflict concerns a statute of limitations, the governmental interest approach generally leads California courts to apply California law. and especially so where California's statute would bar a claim. California's interest in applying its own law is strongest when its statute of limitations is shorter than that of the foreign state, because a "state has a substantial interest in preventing the prosecution in its courts of claims which it deems to be 'stale.' Hence, subject to rare exceptions, the forum will dismiss a claim that is barred by its statute of limitations."

324 F.3d 692, 716–17 (citations omitted).

Plaintiff contends that Florida has a legitimate interest in this cause of action because the communication from Defendants originated in Florida, Defendants brought the original defamation case against Plaintiff in Florida, AAPS is headquartered in Florida, and the events that gave rise to this litigation occurred in

Florida.  Because California's interest in applying its own law is strongest when its statute of limitations is shorter than that of the foreign state (as it is here) and Plaintiff has not presented evidence of such a rare exception that overcomes this interest, California law applies.  As such, Plaintiff's defamation claim is time-barred and summary judgment is **GRANTED**.

## G.   INTENTIONAL INTERFERENCE WITH ECONOMIC ADVANTAGE

Plaintiff alleges intentional interference with prospective economic advantage as to all Defendants because they knew that terminating her membership, thereby rescinding her certification, would disrupt Plaintiff's economic relationships.  Plaintiff contends that she will lose $158,000 a year for the rest of her career from employers, service providers, and insurance carriers purely due to the loss of her certification. Plaintiff's claim fails for several reasons.

To establish a claim for intentional interference with economic advantage, Plaintiff must show: 1) that Plaintiff and a third party were in an economic relationship that probably would have resulted in an economic benefit to Plaintiff; 2) that each defendant knew of the relationship; 3) that each defendant intended to disrupt the relationship; 4) that each defendant engaged in wrongful conduct through misrepresentation, fraud or violation of a statute; 5) that the relationship was disrupted; 6) that Plaintiff was harmed; and 7) that each of the defendants' wrongful conduct was a substantial factor in causing Plaintiff's harm.  *See* CACI 2202.

Plaintiff contends that Defendants' wrongful conduct caused her to lose her certification, and was a substantial factor in causing her harm.  Plaintiff is clearly mistaken.  As stated above by this Court, and by the uncontroverted facts, Plaintiff's certification with APBS was not affected in any way by the termination of her membership.  Plaintiff remains certified with ABPS, subject to her payment of past due Certification Maintenance Fees.  (UFs 12, 25.)  Plaintiff is trying to make her loss of certification a factual dispute that is purely within the jury's purview of

deliberations.  However, this fact is not in dispute.  The termination letter specifically informed Plaintiff that the termination of her membership would have no impact on her certification (*see* AD Decl., Ex.2, p.11) and AAPS did not take any action to interfere with Plaintiff's certification.  AAPS even sent Plaintiff numerous reminders to pay her CMFs, which would have allowed AAPS to continue to attest to her Diplomate status in response to any inquiries.  (UFs 8-15, 25, 33-35.)  Plaintiff cannot establish that Defendants were a substantial factor in causing her harm and, as such, summary judgment as to this claim is **GRANTED**.

**H.   UNFAIR BUSINESS PRACTICES**

California Business and Professions Code §17200, et seq., prohibits any "unlawful unfair, or fraudulent business act or practices."  To satisfy the "unlawful" prong, Plaintiff must establish a violation of an underlying statute or regulation. *Gregory v. Albertson's, Inc.*, 104 Cal. App. 4th 845, 857 (2002); *McKell v. Wash. Mutual, Inc.*, 142 Cal. App. 4th 1457, 1474 (2006); *Khoury v. Maly's of Cal., Inc.*, 14 Cal. App. 4th 612, 619 (1993).  Because Plaintiff's breach of contract and fraud claims survive, as stated in this Court's order, summary judgment as this claim is **DENIED**.

**Plaintiff's Motion for Summary Judgment**

**A.   BREACH OF CONTRACT**

Plaintiff's motion for summary judgment fails because it is based upon six contentions, each of which either fail to establish a breach by AAPS as a matter of law or cannot be decided as a matter of law.

First, Plaintiff contends that she was not properly apprised of the charges against her and that, accordingly, she was unable to properly address the allegations. (Mot. 6.)  According to the AAPS bylaws, where the bylaws do not specify otherwise, AAPS must operate and function according to Roberts Rules of Order, Newly Revised ("RRONR"), AAPS Bylaws Fifteenth Revision June 25, 2011("Bylaws").   The

1   bylaws are silent on the details of the preferring of charges.  Under RRONR, in a

2   disciplinary proceeding against a member, the organization must charge the member

3   with an offense and provide a specification of what the accused is alleged to have

4   done which, if true, constitutes an instance of the offense indicated in the charge.

5   RRONR, p. 662, lines 3 to 7.

6       AAPS notified Plaintiff on May 8, 2012 that a special meeting was to be held,

7   where the disciplinary committee would "consider charges against [her] for conduct

8   injurious to the best interest of AAPS and/or incompatible with its purposes, as more

9   specifically described in the materials annexed hereto as Exhibit 1." (*See* Exhibit 1 to

10  RC Decl. to MSJ (ECF Doc. #236-11), p.5.)  Exhibit 1 was a copy of the counterclaim

11  filed against several parties, including Plaintiff, in the pending Florida litigation.

12  Specifically, with regard to Plaintiff, the counterclaim set forth numerous allegations

13  pertaining to all counter-defendants, which was defined to include Plaintiff, and

14  specifically alleged causes of action against Plaintiff sounding in defamation, civil

15  conspiracy and injurious falsehood.  Moreover, Plaintiff was clearly aware of the

16  precise nature of the charges brought against her, as evidenced by the fact that she

17  addressed these charges in her May 24, 2012 letter to the Board.  It is clear that

18  Plaintiff was properly apprised of the charges and allegations against her, and, as such,

19  this aspect of her motion is **DENIED**.

20

21      Second, Plaintiff alleges that AAPS breached its bylaws in terminating her

22  membership because she was not permitted to appear before the entire Board of

23  Directors of AAPS prior to the Board's vote on termination.  (Mot. 7.)  As discussed

24  above, there is no requirement in AAPS's bylaws that mandates that a member be

25  permitted to appear before the entire Board prior to termination of membership.

26  Plaintiff also contends that the allotted 15 minutes was not a reasonable amount of

27  time to present her defense.  (*Id*.)  First and foremost, Plaintiff has no standing to

28  allege that 15 minutes was insufficient because she did not appear for the hearing and,

as such, she did not utilize any of the allotted 15 minutes, and thus clearly did not run out of time to present any defense. (AFs 83 & 84.) Moreover, the bylaws are silent as to the amount of time to be provided, so no breach of contract exists. As such, this aspect of her motion is **DENIED**.

Third, Plaintiff contends that AAPS did not consider the written evidence that she submitted in her defense. (Mot. 10.) On May 24, 2014, Plaintiff sent a six-page letter to all of the members of the AAPS Board of Directors that contained evidence explaining why she should be permitted to remain a member of AAPS in good standing. (Ex. 5-1 to 5-6, p. 220–225, Stewart Decl. ¶20, SS 32.) However, according to a communication dated June 9, 2012 from Montes to Cerrato reflecting the decision of the Disciplinary Committee to expel Plaintiff, which was produced in discovery in response to a request for a copy of the minutes of the disciplinary hearing, "There wasn't any defense documentation presented either before or during the meeting." (Ex. 7-1; p. 235; SS ¶37.) Plaintiff stated that she sent the letter to the Board and not the Disciplinary Committee because she was not sure which members of the Board were on the Committee. (Mot. 10.) A factual dispute exists whether Plaintiff's letter constitutes "defense documentation," whether it was properly presented, and whether or not it was excluded. As such, this aspect of Plaintiff's motion is **DENIED**.

Fourth, Plaintiff argues that AAPS unfairly shifted the burden of proof onto Plaintiff to disprove her charges. (Mot. 11) Plaintiff bases this contention upon Dr. Montes's June 9, 2012 email, which notes that the Plaintiff "did not disprove [her] actions of 'conduct not in the best interest or beneficial to AAPS and . . . the remaining members of the Association" during or before the hearing, and that the Disciplinary Committee therefore recommends her expulsion. (Ex. 7-1; p. 235; SS ¶37.) However, this is not the proper standard stated in AAPS's bylaws. Section 3.05 of the bylaws states that any person to be disciplined may submit such evidence that may "show that he or she is qualified to continue as a member…." (AAPS Bylaws

Fifteenth Revision June 25, 2011.)  Dr. Montes, therefore, incorrectly states that the burden of disproving the charges rested with Plaintiff.  Whether this distinction actually had any bearing on the position of the Board with regards to Plaintiff's termination is unclear, and is a factual dispute. As such, this aspect of Plaintiff's motion is **DENIED**.

Fifth, Plaintiff contends that Plaintiff lost her board certification as a result of her membership termination.  Plaintiff never lost her certification with ABPS (as stated in this Court's Order), nor would any loss of certification constitute a breach of contract.  Sixth, Plaintiff contends that the Florida court ruled that the disciplinary hearing did not comport with AAPS bylaws, but this is not accurate, Plaintiff clearly misconstrued that Court's ruling.

In sum, Plaintiff's Motion for Summary Judgment is dismissed in its entirety, although it did raise two factual disputes: whether AAPS considered Plaintiff's written evidence she submitted in her defense and whether AAPS unfairly shifted the burden of proof onto Plaintiff to disprove her charges.

## V.    CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendants' Motion for Summary Judgment as to the following claims: Title VII, FEHA, the Third and Fifth Count of Fraud, Intentional Interference with Economic Advantage, and Defamation. The Court **DENIES** Defendants' Motion in all other respects.  In addition, the Court **DENIES** Plaintiff's Motion for Summary Judgment in its entirety.

**IT IS SO ORDERED.**

November 30, 2015

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**